Ronald F. Price (5535)
Price Parkinson & Kerr, PLLC
5742 West Harold Gatty Drive, Suite 101
Salt Lake City, Utah 84116
Telephone: (801) 530-2964
E-mail: ronprice@ppktrial.com

Jonathan W. Emord (Virigina Bar No. 41177) (*pro hac vice application forthcoming*)
EMORD & ASSOCIATES, P.C.
11808 Wolf Run Lane
Clifton, VA 20124
Telephone (703) 239-8968
E-mail: jemord@emord.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| BOTANIC TONICS, LLC, an Oklahoma limited liability company, and GLOBAL KRATOM COALITION, INC., a Delaware non-profit corporation,<br><br>Petitioners,<br><br>v.<br><br>KELLY PHERSON, Commissioner of the Utah Department of Agriculture and Food; AMBER BROWN, Deputy Commissioner of the Utah Department of Agriculture and Food; BRADON FORSYTH, Utah State Chemist and Director of the Utah Specialized Product Division; and DEREK BROWN, Attorney General of the State of Utah,<br><br>Defendants. | **MOTION FOR PRELIMINARY INJUNCTION**<br><br><br>Case No. 2:26-cv-00267<br><br><br>Judge ___Dustin B. Pead_____ |

## RELIEF SOUGHT AND SUPPORTING GROUNDS

Plaintiffs Botanic Tonics, LLC ("BT") and Global Kratom Coalition, Inc. ("GKC"),

pursuant to Fed. R. Civ. P. 65(a) and DUCivR 7-1(a)(4)(C); 7-1(e)(2), hereby submit this Motion

for Preliminary Injunction, seeking to enjoin the Defendants in their official capacities pursuant to *Ex Parte Young*, 209 U.S. 123 (1908) and 42 U.S.C. § 1983, from enforcing a new Utah law, the Kratom Regulation Act, signed by Governor Spencer J. Cox on March 26, 2026, Utah Code Sections 4-45-102; 103; 104; and 108; and 58-37-4  (hereinafter, "KRA").[1]  The Defendants' enforcement of that law will violate Plaintiffs' federal civil rights protected under 42 USC § 1983 by forcing Plaintiffs, contrary to the Supremacy Clause of the U.S. Constitution, to comply with KRA requirements that compel violation of federal law requirements, making compliance with both state and federal law impossible.

The KRA violates the Section 1983 rights of the Plaintiffs under the federal Express and Conflict Preemption doctrines of the Supremacy Clause of Article VI, Clause 2 of the United States Constitution and governing precedent.

The KRA does so by violating the express statement in the Nutrition Labeling and Education Act of 1990 amendments to the federal Food Drug and Cosmetic Act (FDCA), 21 U.S.C. § 343-1(a), requiring state dietary supplement labeling law to be "identical" to federal dietary supplement labeling law[2], and by making it impossible for Plaintiffs to comply with both federal requirements in 21 U.S.C. § 321(ff); 342(f); and 343-1(a) (and associated federal implementing regulations) and KRA requirements.[3]

---

[1] A copy of the KRA is attached hereto as Exhibit A and is available at:
https://le.utah.gov/Session/2026/bills/static/SB0045.html.
[2] Under 21 U.S.C. § 321(ff), a dietary supplement is a "food" ("a dietary supplement shall be deemed to be a food within the meaning of this Chapter").
[3] In Plaintiffs' Complaint, the Plaintiffs also raise Fourteenth Amendment Due Process and Equal Protection causes of action against the KRA.  For purposes of this motion, however, the argument is limited to Plaintiffs' federal preemption cause of action, as that matter may be resolved on the law alone (the text of the KRA, the text of the applicable provisions of the federal FDCA, and the relevant federal preemption precedent).

This motion satisfies Plaintiffs' burden of proof by establishing, as a matter of law, that Plaintiffs: (1) have a substantial likelihood of success on the merits of their as-applied, pre-enforcement claim that the KRA is preempted by the federal FDCA; (2) suffer immediate, substantial, continuing and irreparable damage due to the Kratom Adjustment Act's required cessation of all sales of Plaintiffs' combination kratom leaf and noble kava root dietary supplement *feel free*® by May 6, 2026, presently sold through 321 Utah stores, and due to its concomitant brand dilution effects; (3) are favored by the equities because the threatened actual injury to Plaintiff/movants outweighs the speculative and theoretical "injuries" of the Defendants from delay in implementation of the KRA; and (4) do not offend the public interest, but support it, by enjoining a state law that is express and conflict preempted by federal law and that places the Utah consuming public in imminent risk of illness or injury from adulterated kratom.[4]

### STANDING FOR THIS PRE-ENFORCEMENT, AS-APPLIED CHALLENGE UNDER *EX PARTE YOUNG* AND 42 U.S.C. § 1983

This motion concerns a pre-enforcement, as-applied constitutional and statutory challenge under *Ex Parte Young,* 209 U.S. 123 (1908) and 42 U.S.C. § 1983. It is directed against the Defendants in their official capacities, not against the state of Utah. Plaintiffs suffer injury-in-fact under Article III of the U.S. Constitution because on or before May 6, 2026, the KRA will take effect and, thereupon, as a direct result of its operation and enforcement,

---

[4] *See, e.g., NetChoice, LLC v. Reyes,* 748 F.Supp.3d 1105, 1119 (D. Utah 2024) (in order to obtain a preliminary injunction, moving party must establish the following four elements: "(1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harm ... the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest") (quoting *Leachco, Inc. v. Consumer Prod. Safety Comm'n,* 103 F.4th 748, 752 (10th Cir. 2024) (quoting *Gen. Motors Corp. v. Urb. Gorilla, LLC,* 500 F.3d 1222, 1226 (10th Cir. 2007)).

immediately and permanently prohibit Plaintiffs from continuing to sell in 321 Utah retail locations their combination kratom leaf and noble kava root dietary supplement *feel free*® as well as all other dietary supplements comprised of whole kratom leaf and other lawful dietary supplement ingredients.  Plaintiffs' projected losses due to the statute's proscriptive effect exceed $10,704,428 (Ten Million Seven Hundred and Four Thousand Four Hundred and Twenty Eight Dollars).  To comply with the KRA, Plaintiffs have notified their direct to store distributors that all kratom leaf products combined with any other ingredient must be removed from store shelves and not made available for sale as of May 6, 2026, unless action is taken by this Court to enjoin implementation of the statute.[5]

The named Defendants each are responsible for enforcement of the KRA.  Kelly Pehrson is the Commissioner of the Utah Department of Agriculture and Food (UDAF).  In that capacity, he determines who may be registered to sell kratom in Utah and determines what regulations shall be applied and what regulatory actions shall be taken to enforce the KRA.

Brandon Forsyth is the Utah State Chemist and Director of the Specialized Products Division of UDAF.  In that capacity, he will aid enforcement by determining whether products comply with the KRA.

Amber Brown is a Deputy Commissioner of UDAF.  In that capacity, she will help determine which companies should be excluded from registration and steps to implement regulations adopted to enforce the KRA.

Derek Brown is the Attorney General of the State of Utah.  In that capacity, he will cause legal actions, including prosecution, to be taken against companies identified as in violation of the KRA.

---

[5] *See* EXHIBIT B.

**FACTUAL BACKGROUND**

Plaintiffs have sold *feel free*® in Utah since June 25, 2021, a combination dietary supplement comprised of two botanicals: whole kratom leaf and noble kava root.  The product has a remarkable safety record nationwide with only 996 adverse events reported, none serious by FDA's definition, despite over 156 million servings sold. In Utah, there have been zero adverse events reported.[6]

Fourteen peer reviewed and published clinical trials, including the FDA's own Single Ascending Dose trial, establish that the kind of whole kratom leaf used in Plaintiffs' *feel free*® does not present a significant or unreasonable risk of illness or injury when consumed according to label directions by healthy adults.[7] In 2025, those trials were supplied by Plaintiffs to the Defendants who hold offices at UDAF.  One of those trials is a peer-reviewed, published, prospective, randomized, double-blind, placebo-controlled clinical trial of *feel free*® itself, which establishes results complementary to the 13 other trials, revealing no significant or unreasonable risk of illness or injury when *feel free*® is consumed according to label directions by healthy adults.[8]

On March 26, 2026, Governor Cox signed the KRA.[9] Absent an injunction by this Court, the KRA will take effect May 6, 2026. Once effective, the KRA will make BT's *feel free*® product, and all other kratom products which include other dietary supplements and/or other ingredients that are legal under federal law, immediately illegal and thus banned from sale in

---

[6] *See* EXHIBIT H.
[7] *See* EXHIBIT C.
[8] *See* EXHIBIT D.
[9] *See* KRA, Exhibit A hereto.

Utah.[10] Thus, not only will implementation of the KRA cause financial harm to BT, it will completely destroy BT's reputation and position in the marketplace.

## I.   PLAINTIFFS HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

### A.  THE GOVERNING PRECEDENT ON CONFLICT AND EXPRESS PREEMPTION

Multiple federal appellate courts have held that the labeling provisions in 21 U.S.C. § 343 expressly preempt state laws that impose requirements "not identical to" federal standards under the express preemption provision in 21 U.S.C. § 343-1(a)(5).  The Second, First, and Ninth Circuits have consistently ruled that state dietary supplement labeling restrictions are preempted when state law would impose requirements *different* from (i.e., not completely identical to) those mandated by federal law.[11]   The Tenth Circuit follows this same approach in evaluating express preemption.[12]

The Supreme Court and the Tenth Circuit have held Conflict Preemption present when it is impossible for a private party to comply with both state and federal legal requirements, or when state law stands as an obstacle to accomplishment and execution of the full purposes and objectives of Congress.[13]

---

[10] *See, e.g.,* KRA, Utah Code § 4-45-102(5)(b) (effect. May 6, 2026).
[11] *See, e.g., Jackson -Mau v. Walgreen Co.,* 115 F.4th 121, 128 (2nd Cir. 2024) ("the FDCA preempts 'any state law that provides for labeling requirements that are not exactly the same as those set forth in the FDCA and its regulations"); *Ferrari v. Vitamin Shoppe Industries LLC,* 70 F.4th 64, 68 (1st Cir. 2023); and *Dachauer v. NBTY, Inc.*, 913 F.3d 844, 847-848 (9th Cir. 2019).
[12] *See, e.g., Pharm. Care Mgmt. Ass'n v. Mulready,* 78 F.4th 1183, 1192-1195 (10th Cir. 2023); *Thornton v. Tysons Food, Inc.,* 28 F.4th 1016, 1021, 1025-1026 (10th Cir. 2022).
[13] *See, e.g., Williams v. Reed,* 604 U.S. 168, 170, 174-176 (2025) (holding state exhaustion of administrative remedies requirement preempted due to conflict with purposes of Section 1983 in challenge to delays in the state administrative process); *Voter Reference Foundation, LLC v. Torrez*, 160 F.4th 1068, 1079-1084 (10th Cir. 2025) (finding conflict preemption where it was impossible for a private party to comply with its state and federal requirements or where state

### B.  THE KRA'S THREE IRRECONCILABLE CONFLICTS WITH THE FEDERAL FDCA

***KRA Ban on Combining Kratom with "Nonkratom Substances."*** The KRA (EXHIBIT A) allows sale of kratom leaf alone in a dietary supplement but prohibits registration and sale of kratom leaf (derived from the mitragyna speciosa plant) if combined with any "nonkratom substance."[14] It therefore prohibits the registration and sale of Plaintiffs' *feel free*® (combining kratom leaf with noble kava root) and all other kratom combination products.   The prohibition on combination botanical dietary supplements conflicts with federal law, which expressly allows combination botanical dietary supplements in the FDCA, 21 U.S.C. § 321(ff); prescribes comprehensive labeling requirements for combination products in 21 U.S.C. § 343 and its implementing regulations[15] and defines when combination products may not be sold due to adulteration in 21 U.S.C. § 342(f).

***KRA Encapsulating Agent Exception.***  The KRA prohibits kratom leaf from being "mixed or packed with a nonkratom substance" <u>unless</u> the nonkratom substance is an "inert" "encapsulating agent" that [satisfies all five of the following conditions]: (1) is composed of food-grade or pharmaceutical-grade materials "**with no pharmacological activity**;" (2) contains no psychoactive substances, stimulants, or adulterants; (3) serves **"solely to contain or deliver the plant matter;"** (4) does not contain any kratom extract [i.e., any part of kratom leaf in concentrated form]; and (5) does not contain 7-hydroxymitragyine at a level greater than 0.4% of the total kratom alkaloid composition [i.e., the total amount of all kratom derived from kratom leaf].[16]

---

law stood as an obstacle to accomplishment of congressional objectives under the National Voter Registration Act).

[14] Utah Code § 4-45-102(5)(b) (effect. May 6, 2026).

[15] *See* the federal labeling implementing regulations in 21 C.F.R. Part 101.

[16] Utah Code § 4-45-102(5) (effect. May 6, 2026).

The KRA encapsulating agent provision directly conflicts with the express provisions of the federal Food Drug and Cosmetic Act in 21 U.S.C. § 342(f), which allows dietary ingredients in a dietary supplement in combination with other dietary ingredients consistent with 21 U.S.C. § 321(ff) unless they "present a significant or unreasonable risk of illness or injury" (i.e., are adulterated) based on labeled directions for use or, if none, based on common use.[17] It also directly conflicts with the express provisions of the Food and Drug Administration's Good Manufacturing Practice Guidelines for dietary supplements in FDA's implementing regulations, 21 C.F.R. §§ 111.15(b); 111.15(c)(1); and 111.15(c)(3).  As explained more fully below, the KRA encapsulating agent provision is so narrowly drawn that it precludes reliance on "nonkratom substances" in pasteurization of kratom leaf, which substances are essential to rid kratom leaf of pathogenic bacteria and to comply with federal adulteration law in 21 U.S.C. § 342(f), thus making it impossible for Plaintiffs to comply with both federal adulteration law and the KRA.

*KRA Ban on Promotion of Kratom Dietary Supplements Combined with Nonkratom Substances.* The KRA amends the pre-existing Utah law governing kratom, entitled the Kratom Consumer Protection Act (Utah Code Ann. § 4-45-101 through 4-45-108), which pre-existing Act contains a provision that prohibits labeling not in accordance with the Act.  In Utah Code Ann. § 4-45-102(4)(b), the definition of "kratom processor" includes anyone who "advertises, represents, or holds oneself out as selling, preparing, or maintaining a kratom product[.]" Labeling[18] for prohibited kratom/nonkratom product combinations is thus explicitly forbidden

---

[17] *See, e.g.,* 21 U.S.C. § 342(f).
[18] Under 21 U.S.C. § 321(m), "labeling" is defined as all labels and other written, printed, or graphic matter upon any article, its containers/wrappers, or accompanying such article at any time while held for sale.  Those same materials are "advertising" within the meaning of Utah's

under the amended KRA. The KRA's ban on the labeling of any kratom dietary supplement that is combined with a nonkratom substance thus causes the Kratom Consumer Protection Act, as amended by the Kratom Regulatory Act, to violate the express preemption provision in 21 U.S.C. § 343-1(a), which forbids any deviation from federal dietary supplement labeling requirements, including those germane to the labeling of combination dietary supplements.[19] Under 21 U.S.C. § 321(ff); 21 U.S.C. § 342(f); and 21 U.S.C. § 343-1(a)(5), federal law makes the sale of combination botanical dietary supplements lawful so long as they are not adulterated and comprehensively defines labeling for use in commercial sale of those combination products. The KRA not only forbids combined kratom and nonkratom substance dietary supplements, it forbids their labeling, thus violating the express command in 21 U.S.C. § 343-1(a)(5) that state dietary supplement labeling law be "identical" to federal law.

The KRA schedules 7-OH and mitragynine pseudoindoxyl as Schedule I substances. Violations are subject to civil and criminal sanctions.  Only a kratom processor or retailer registered by UDAF may sell kratom dietary supplements, and only existing licensed retail tobacco specialty businesses may be registered as kratom retailers.[20]

### C.  CONFLICT AND EXPRESS PRE-EMPTION UNDER 21 U.S.C. §§ 321(FF); 342(F); AND 343-1(a)(5)

The KRA (specifically, Utah Code Sections 4-45-102; 103, 104; and 108)and Utah Code § 58-37-4 (effect. May 6, 2026), conflicts with 21 U.S.C. §§ 321(ff); 342(f); and 343-1(a)(5) of the FDCA.

---

Kratom Consumer Protection Act and also "represent" and "hold out" the kratom product within the meaning of that Act.

[19] *See, e.g.,* 21 U.S.C. § 343-1(a).
[20] *See, e.g.,* Utah Code § 4-45-104(4) (effect. May 6, 2026).

The KRA contradicts the express terms of 21 U.S.C. § 321(ff). Under the KRA, the combination of kratom with a "nonkratom substance" in a dietary supplement is forbidden. That forbids the sale of Plaintiffs' product, a dietary supplement that combines kratom leaf with noble kava root. The KRA also forbids every kratom combination with any other botanical or vitamin, mineral, herb, or amino acid.[21] That ban directly conflicts with the federal Food Drug and Cosmetic Act, 21 U.S.C. § 321(ff), which defines a lawful dietary supplement as one that contains "one *or more* of the following dietary ingredients: (A) a vitamin; (B) a mineral; (C) an herb or other botanical; (D) an amino acid; (E) a dietary substance for use by man to supplement the diet by increasing the total dietary intake; or (F) a concentrate, metabolite, constituent, extract, *or combination of any ingredient in clause (A), (B), (C), (D), or (E).*"[22] It is impossible for Plaintiffs to be in compliance with both federal and state law because while under federal law combination kratom/noble kava root dietary supplements are allowed, under the KRA they are prohibited.

The KRA also contradicts the express terms of 21 U.S.C. § 342(f). Once a dietary supplement satisfies the definition in 21 U.S.C. § 321(ff) (such as a combination botanical dietary supplement), it may be lawfully sold in the United States unless it is "adulterated" within the meaning of 21 U.S.C. § 342(f). The KRA includes a narrow exception for encapsulating agents[23], which runs afoul of 21 U.S.C. § 342(f). First, the KRA disallows combination dietary supplements allowed under the FDCA for which it lacks evidence establishing them to present a significant or unreasonable risk of illness or injury under labeled conditions for use. Second, it disallows use of common cleansing and pasteurization methods, which add to kratom

---

[21] *See, e.g.,* Utah Code § 4-45-102(5) (effect. May 6, 2026).
[22] 21 U.S.C. § 321 (ff) (emphasis added).
[23] *See, e.g.,* Utah Code Ann.4-45-102(5)(b) (effect. May 6, 2026).

"nonkratom substances." Those cleansing and pasteurization methods are required for kratom dietary supplements to comply with federal law by not presenting "a significant or unreasonable risk of illness or injury," the federal adulteration standard, and by ensuring compliance with FDA's Good Manufacturing Practice requirements for dietary supplements in 21 C.F.R. §§ 111.15(b); 111.15(c)(1); and 111.15(c)(3).

In the ordinary course of GMP-compliant kratom leaf processing, to kill 99.99 percent of bacteria in the hydroscopic plant, heated chlorinated water is used to wash and pasteurize pulverized kratom leaf.[24] The KRA encapsulating agent exception does not allow chlorinated water to be mixed with kratom because chlorinated water is not used solely "to contain or deliver the plant matter." Furthermore, the pasteurization process with chlorinated water oxidizes organic molecules and inactivates enzymes, both of which are "pharmacological activities."[25] Moreover, no potential chemical or radiation substitute complies with the requirements of the KRA encapsulating agent exception, because each one has "pharmacological activity" and is intended to eliminate pathogenic bacteria, not solely "to contain or deliver the plant matter."

The KRA encapsulating agent exception does not allow use of food grade materials, like chlorinated water in pasteurization, if they have "pharmacological activity," which they must to kill pathogenic bacteria in the hydroscopic kratom leaf. The KRA prohibits safe means required by federal law, by which kratom leaf is rendered free of pathogenic bacteria in fulfillment of the requirements of 21 U.S.C. § 342(f) and of FDA's GMP implement regulations in 21 C.F.R. §§

---

[24] *See* EXHIBIT E: Declaration of Botanic Tonics Chief Science Officer Ramsey Atallah; EXHIBIT F: Declaration of Toxicologist Dr. Robert Verkerk.
[25] *See* EXHIBIT E: Declaration of Botanic Tonics Chief Science Officer Ramsey Atallah; EXHIBIT F: Declaration of Toxicologist Dr. Robert Verkerk.

111.15(b); 111.15(c)(1); and 111.15(c)(3), thus making Plaintiffs' compliance with both state and federal law impossible.[26]

The KRA thereby prohibits safe means, required under federal law, by which kratom leaf can be cleansed, pasteurized, and rendered free of pathogenic bacteria, contradicting federal statutory adulteration requirements. Chemical and radiation substitutes for chlorinated water are unavailing because they too are not used solely "to contain or deliver the plant matter" and introduce "pharmacological activity" to kill pathogenic bacteria. Certain of the substitutes are also unacceptable because they add potential new adulterants.[27]

In many kratom leaves, mitragynine pseudoindoxyl occurs naturally, but in de minimis amounts, which amounts are not associated with adverse effects in the human body.[28] The KRA (specifically, Utah Code Ann. § 58-37-3.4(2)(a)(vii)) now makes mitragynine pseudoindoxyl a Schedule I controlled substance, and thus prohibits all mitragynine pseudoindoxyl, regardless of its quantitative amount, rendering kratom leaf containing even de minimis amounts that do not satisfy the federal adulteration standard under 21 U.S.C. § 342(f) to be nevertheless prohibited under the KRA, thus making simultaneous compliance with federal and state law impossible.

While state law may augment (or add requirements supplemental to) those in federal law so long as state law does not conflict with federal law or prevent effectuation of federal objectives, state law may not under the Supremacy Clause make it impossible for a party to

---

[26] Substitutes for chlorinated water and heat to achieve plant cleansing and pasteurization involve use of chemicals, which are not solely to contain or deliver the plant matter, and also have pharmacological activity; some of which are adulterants. *See* EXHIBIT E: Declaration of Botanic Tonics Chief Science Officer Ramsey Atallah; EXHIBIT F: Declaration of Toxicologist Dr. Robert Verkerk.

[27] *See* EXHIBIT E: Declaration of Botanic Tonics Chief Science Officer Ramsey Atallah; EXHIBIT F: Declaration of Toxicologist Dr. Robert Verkerk.

[28] See EXHIBIT E: Declaration of Botanic Tonics Chief Science Officer Ramsey Atallah; EXHIBIT F: Declaration of Toxicologist Dr. Robert Verkerk.

comply with both state and federal requirements, as is the circumstance here. State law may not under the Supremacy Clause form an obstacle to accomplishment and execution of the full purposes and objectives of Congress.  The KRA expressly conflicts with the FDCA by frustrating achievement of the objectives of the federal FDCA by denying consumers access to combination dietary supplements expressly intended to be available to them under the terms of federal law and by imposing restrictions that defeat federal adulteration law designed to protect the public from pathogenic bacteria in kratom containing dietary supplements.[29]

## II.    PLAINTIFFS SUFFER IRREPARABLE INJURY IF THE INJUNCTION IS DENIED

If the injunction requested by Plaintiffs against enforcement of the KRA by Defendants is denied, Plaintiffs will, on May 6, 2026 (the KRA effective date) have to cease sale of all *feel free*® dietary supplements in Utah at 321 retail locations.  In anticipation of that event, and to ensure compliance on the effective date, BT has informed its contracted direct to store distributors (DSDs) to cease sale of those products, effective May 6, cutting off supply to 321 retail outlets in Utah.  The estimated loss to Plaintiff Botanic Tonics of cessation of all sales and the sunk cost of all related advertising is in excess of $10,704,428.  In addition to actual and ongoing financial losses, BT will suffer continuing brand dilution as a result of the elimination of its product from Utah retail and elimination of its advertising associated with the product.[30]

---

[29] The KRA returns the law in Utah to what it was nationwide before FDA enforcement of 21 U.S.C. § 342(f) and Good Manufacturing Practice regulations in 21 C.F.R.. §§ 111.15(b); 111.15(c)(1); and 111.15(c)(3).  A major multistate outbreak of Salmonella infections occurred between January 2017 and May 2018, involving kratom not processed in compliance with federal adulteration standards.  The infections resulted in 199 cases across 44 states and in 54 hospitalizations.  The investigations by CDC and FDA established kratom to be a vehicle for carrying Salmonella, resulting in FDA's first-ever mandatory food recall.  *See* Foodborne Pathog. Dis. 2022 Aug. 1; 19(9): 648-653; CDC, 2018 Salmonella Infections Linked to Kratom (Final Update), https://archive.cdc.gov/www_cdc_gov/salmonella/kratom-02-18/index.html#:~: *See also* EXHIBIT F: Declaration of Toxicologist Dr. Robert Verkerk.
[30] *See* EXHIBIT G: Confirmation of Financial and Brand Losses from Botanic Tonics CFO.

### III.     THE ACTUAL INJURY SUFFERED BY THE PLAINTIFFS MOVANTS OUTWEIGHS THE SPECULATIVE AND THEORETICAL INJURY OF DEFENDANTS

Under the Kratom Consumer Protection Act as it existed prior to the amendments at issue, Defendants have existing regulatory authority to deny registration, embargo from market sale, and prosecute civilly and criminally any who market and sell a kratom product that is injurious to consumer health.[31]  An injunction holding the KRA preempted by federal law will therefore cause no provable injury to Defendants beyond inchoate and sheer speculative or theoretical harm, as the Defendants will retain full power to avoid registration of and to remove injurious products from the market.  Consequently, the actual injury suffered by the Plaintiffs/Movants far outweighs the inchoate, speculative, and theoretical "injury" of the Defendants, causing the balance of equities to strongly favor Plaintiffs.

### IV.     GRANT OF THE INJUNCTION WILL NOT BE ADVERSE TO THE PUBLIC INTEREST, BUT WILL SERVE IT

Because the existing Kratom Consumer Protection Act exists and provides for the embargo of kratom product injurious to consumers, the deregistration of sellers of such products, and the prosecution of sellers of such products, issuance of an injunction by this Court will not be adverse to the public interest in safety.  Moreover, because, as explained above, the KRA is both expressly preempted by federal law and obstructs fulfillment of federal adulteration standards required to ensure that kratom products are fit for consumption and do not present a significant or unreasonable risk of illness or injury, it is manifestly in the public interest that the requested injunction issue promptly.

---

[31] *See, e.g.,* Utah Code § 4-45-108 (eff. May 14, 2019).

14

## V.    NO APPARENT NEED FOR A BOND

It is within the sound discretion of the Court to set a bond for a preliminary injunction, tailored to the circumstances of each case.  In this instance, issuance of the requested preliminary injunction will not create either economic injury to the Defendants or an absence of law sufficient if enforced to protect the public from adulterated kratom products.  Plaintiffs therefore request that no bond be required in association with the issuance of the requested injunction.

DATED this 31st day of March, 2026.

PRICE PARKINSON & KERR, PLLC

 /s/  Ronald F. Price
Ronald F. Price
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 31st day of March, 2026, the foregoing **MOTION FOR**

**PRELIMINARY INJUNCTION** was electronically filed with the Clerk of the Court using the

CM/ECF system, and a copy was also delivered via email to the following:

Kyle J. Kaiser
Melissa Ure
Assistant Utah Attorney General
Litigation Division
Office of the Utah Attorney General
160 East 300 South, 6th Floor
P.O. Box 140856
Salt Lake City, UT  84114-0856
kkaiser@agutah.gov
mure@agutah.gov

/s/ Ronald Price