# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BOTANIC TONICS, LLC, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>KELLY PHERSON, *et al.*,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**<br><br>Case No. 2:26-cv-267-HCN-DBP<br><br>Howard C. Nielson, Jr.<br>United States District Judge |

Plaintiffs Botanic Tonics, LLC, and Global Kratom Coalition, Inc., sue various Utah state officials seeking to enjoin enforcement of portions of Utah's newly enacted Kratom Regulation Act, which will otherwise take effect on May 6, 2026. The Plaintiffs request a preliminary injunction. The court denies that request.

## I.

Plaintiff Botanic Tonics is an Oklahoma-based "manufacturer, distributor, and seller," Dkt. No. 1 at ¶ 7, of a "combination kratom leaf and noble kava root dietary supplement" marketed under the name *feel free*, Dkt. No. 2 at 4. This product is currently sold in 321 Utah stores, *see id.* at 3, and Botanic Tonics' CEO avers that Botanic Tonics had, until recently, a deal to place *feel free* in an additional 852 retail store locations nationwide, *see* Dkt. No. 2-7 at 3. Plaintiff Kratom Coalition, Inc. is an organization that "advocates for safe and responsible natural kratom use and for federal and state regulation to ensure consumer safety and access to natural kratom." Dkt. No. 1 at ¶ 8. Plaintiffs represent that Kratom Coalition has four "sponsors." *Id.* Although Plaintiffs represent that Botanic Tonics is one of these sponsors, *see id.*, they do not identify the others. And while Plaintiffs appear to represent that the other sponsors of Kratom Coalition sell mixtures of kratom leaf and kava root similar to *feel free*, *see id.*, they do not

identify these products by name. Nor do Plaintiffs identify any other specific kratom products sold by Botanic Tonics or any of the other sponsors of the Kratom Coalition.

On March 26, 2026, Utah Governor Spencer Cox signed Senate Bill 45, the Kratom Regulation Act, which will take effect on May 6 absent an injunction. *See* 2026 Utah Laws 480 (S.B. 45 S4); Dkt. No. 2-1.[1] The Plaintiffs maintain that this statute, which they refer to as the KRA, will outlaw the distribution and sale of *feel free*, which combines kratom leaves with kava root, because the statute prohibits any "kratom product" that is "mixed or packed with a nonkratom substance unless the nonkratom substance is an inert encapsulating agent . . . ." New Utah Code § 4-45-102(5); *see also* Dkt. No. 2 at 6. Plaintiffs represent that Botanic Tonics has directed "all Utah direct to store distributors . . . to ensure all feel free Classic is either 100% sold through or removed from store shelves no later than May 6, 2026." Dkt. No. 2-2 at 2. And they argue that Botanic Tonics will be irreparably injured absent an injunction because it will suffer losses from this "cessation of all sales" of *feel free*, forfeit the benefit of "the sunk cost of all related advertising," and face "continuing brand dilution as a result of the elimination of its product from Utah retail and elimination of its advertising associated with the product." Dkt. No. 2 at 13.

The Plaintiffs argue that the provisions of the Kratom Regulation Act that will ban the sale of *feel free* in Utah are preempted by various federal laws addressing dietary supplements. *See, e.g.*, *id.* at 2. They accordingly seek a preliminary injunction barring the Defendants— various state officials who the Plaintiffs allege will be responsible for enforcing the Kratom

---

[1] The court will refer to the Utah Code as it will be amended once the Kratom Regulation Act takes effect as "new Utah Code."

Regulation Act—from enforcing this statute against them for distributing *feel free* pending the disposition of this lawsuit.

**II.**

"Preliminary injunctive relief—whether a temporary restraining order or a preliminary injunction—'is an extraordinary remedy never awarded as of right.'" *Schiermeyer ex rel. Blockchain Game Partners, Inc. v. Thurston*, 697 F. Supp. 3d 1265, 1269 (D. Utah 2023) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). Such relief is "the exception rather than the rule" and will be granted only if "the movant's right to relief [is] clear and unequivocal." *Aposhian v. Barr*, 958 F.3d 969, 978 (10th Cir. 2020) (cleaned up). A party seeking such relief "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20.

"[E]ach of these elements is a prerequisite for obtaining" preliminary injunctive relief. *Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016). It follows that "a plaintiff's failure to prove any one of the four preliminary injunction factors renders its request for injunctive relief unwarranted." *Village of Logan v. United States Dep't of Interior*, 577 F. App'x 760, 766 (10th Cir. 2014) (unpublished).

The court concludes that the Plaintiffs have failed to show a likelihood of success on their legal arguments that federal law preempts any relevant part of the Kratom Regulation Act. The court accordingly denies their request for preliminary injunction without addressing the other *Winter* factors.

## A.

"[T]he purpose of Congress is the ultimate touchstone in every pre-emption case." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (cleaned up). "[I]n all pre-emption cases, and particularly in those in which Congress has legislated in a field which the States have traditionally occupied, [courts] start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Id.* (cleaned up).

> There are three types of preemption: 1) express preemption, which occurs when the language of the federal statute reveals an express congressional intent to preempt state law; 2) field preemption, which occurs when the federal scheme of regulation is so pervasive that Congress must have intended to leave no room for a State to supplement it; and 3) conflict preemption, which occurs either when compliance with both the federal and state laws is a physical impossibility, or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

*US Airways, Inc. v. O'Donnell*, 627 F.3d 1318, 1324 (10th Cir. 2010) (cleaned up).

## B.

The Plaintiffs first argue that the portions of the Kratom Regulation Act that would bar *feel free* are expressly preempted by 21 U.S.C. § 343-1(a), which, they maintain, "forbids any deviation from federal dietary supplement labeling requirements, including those germane to the labeling of combination dietary supplements." Dkt. No. 2 at 9. Plaintiffs contend that the "KRA not only forbids combined kratom and nonkratom substance dietary supplements," but also "forbids their labeling, thus violating the express command in 21 U.S.C. § 343-1(a)(5) that state dietary supplement labeling law be 'identical' to federal law." *Id.*

Express preemption occurs only "when the language of the federal statue statute reveals an express congressional intent to preempt state law." *O'Donnell*, 627 F.3d at 1324. "If the statute contains an express pre-emption clause, the task of statutory construction must in the first

instance focus on the plain wording of the clause . . . ." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993).

21 U.S.C. § 343-1(a)(5) provides that "no State . . . may directly or indirectly establish . . . as to any food in interstate commerce . . . any requirement respecting any claim of the type described in section 343(r)(1) of this title made in the label or labeling of food that is not identical to the requirement of section 343(r) of this title . . . ." Section 343(r)(1), in turn, addresses express or implicit claims made regarding either "the level of any nutrient" in the food or "the relationship of any nutrient" in the food "to a disease or a health-related condition" that do not comport with other statutory provisions.

The court need not explore what requirements these provisions may establish for labeling kratom products—or, indeed, whether they apply to such products at all—because the text of the statute makes clear that Congress intended to preempt only state requirements "respecting any *claim*" made on a label that differ from federally established requirements. *Id.* § 343-1(a)(5) (emphasis added). The challenged portions of the Kratom Regulation Act, by contrast, are silent with respect to the labeling of products containing kratom like *feel free*; they merely prohibit the sale of kratom mixed with any "nonkratom substance" other than an "inert encapsulating agent." New Utah Code § 4-45-102(5)(b). [2]

Nothing in the plain language of Section 343-1 purports to preempt state-level bans on substances. To be sure, a prohibited product cannot be sold no matter how it is labeled. But it clearly does not follow that Congress intended to preempt any state regulation with such an

---

[2] Other parts of the Kratom Regulation Act, such as new Utah Code § 4-45-104(1)(b), do establish requirements regarding "product label[s]" on "kratom product[s]" that may be sold in the State under the new law. But the Plaintiffs do not invoke these labeling provisions, much less argue that these provisions affect their ability to sell *feel free* or that they would be able to sell *feel free* but for the Kratom Regulation Act's labeling provisions.

oblique effect on labeling; to the contrary, the point of these federal provisions appears to be to govern certain specific types of claims made on the labels of products that actually *are* sold, and thus to prevent "misbrand[ing]." 21 U.S.C. § 343. For these reasons, the court has no difficulty concluding that Plaintiffs have failed to demonstrate that they are likely to prevail on this express-preemption claim.[3]

## C.

The Plaintiffs next argue that the Kratom Regulation Act is preempted because "compliance with both" this Act and 21 U.S.C. §§ 321(ff) and 342(f) is "impossible." Dkt. No. 2 at 2. "Even in the absence of an express pre-emption provision, the Court has found state law to

---

[3] Plaintiffs also offer the following argument:

> The KRA amends the pre-existing Utah law governing kratom, entitled the Kratom Consumer Protection Act . . . , which pre-existing Act contains a provision that prohibits labeling not in accordance with the Act. In Utah Code Ann. § 4-45-102(4)(b), the definition of "kratom processor" includes anyone who "advertises, represents, or holds oneself out as selling, preparing, or maintaining a kratom product." Labeling for prohibited kratom/nonkratom product combinations is thus explicitly forbidden under the amended KRA.

Dkt. No. 2 at 8–9 (cleaned up). And in a footnote, the Plaintiffs argue that

> [u]nder 21 U.S.C. § 321(m), "labeling" is defined as all labels and other written, printed, or graphic matter upon any article, its containers/wrappers, or accompanying such article at any time while held for sale. Those same materials are "advertising" within the meaning of Utah's Kratom Consumer Protection Act and also "represent" and "hold out" the kratom product within the meaning of that Act.

*Id.* at 8–9 n.18.

It is difficult to follow the logical leaps and seeming nonsequiturs on which this cryptic argument appears to be built or otherwise to make heads or tails of it. The court notes, however, that the Kratom Regulation Act *repeals* Section 4-45-102(4)(b), the definitional provision on which Plaintiffs appear to rely, and that Plaintiffs do not identify—nor has the court located— any other provision of the Kratom Consumer Protection Act "that prohibits labeling not in accordance with the Act." The court accordingly does not address this argument further.

be impliedly pre-empted where it is impossible for a private party to comply with both state and federal requirements." *Mutual Pharm. Co. v. Bartlett*, 570 U.S. 472, 480 (2013) (cleaned up).

21 U.S.C. § 321(ff) defines the term "dietary supplement," as used in the Federal Food, Drug, and Cosmetic Act. The statutory definition includes "a vitamin; a mineral; an herb or other botanical; an amino acid; a dietary substance for use by man to supplement the diet by increasing the total dietary intake; or a concentrate, metabolite, constituent, extract, or combination of any" of the previously listed ingredients. *Id.* (cleaned up). 21 U.S.C. § 342(f), in turn, specifies the circumstances in which "a dietary supplement" "shall be deemed to be adulterated."

But even if *feel free* falls within the federal definition of a dietary supplement and does not meet statutory criteria for being deemed to be adulterated, these federal statutes do not *require* that *feel free* be sold. Indeed, these generally applicable statutes do not even amount to specific federal approval of this product. Rather, the most that can be said is that because *feel free* meets the federal definition of a dietary supplement and does not meet the criteria of being deemed adulterated, its sale is not prohibited by federal law. It naturally follows that it is not impossible to comply with the Kratom Regulation Act's prohibition of products that mix kratom with non-kratom substances without violating either Section 321(ff) or Section 342(f). Stated plainly, the Plaintiffs can comply with both state and federal law simply by declining to sell *feel free* in Utah. Further, as the Supreme Court has previously explained in an analogous context, "it is illogical to infer that by excluding certain . . . behavior from" a "ban, . . . Congress intended to pre-empt the States' power to prohibit any conduct within that exclusion." *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 132 (1978).

Although the Plaintiffs do not cite it, *Bartlett* does hold that under some circumstances, "an actor seeking to satisfy both his federal- and state-law obligations is not required to cease

acting altogether in order to avoid liability." 570 U.S. at 488. But the facts of that case look nothing like those here. In *Bartlett*, the Supreme Court considered a prescription drug that had been specifically approved by the FDA. And the challenged state law was a common law "design-defect cause of action" that, the Court concluded, would require a prescription drug manufacturer to "either . . . chang[e] [the] drug's design or . . . chang[e] its labeling" to avoid liability. *Id.* at 480, 482. But either change would take the drug out of compliance with federal law, because the FDA had specifically approved the existing design and labeling. *See id.* at 486–87. Under these circumstances, the Court found a congressional "intent to pre-empt" state law because federal law imposes specific "duties" not to "change[] . . . a drug's label" or to "redesign[] the drug" once the drug has undergone the intensive FDA approval process. *Id.* at 477, 483, 493.

Here, by contrast, the purportedly conflicting laws are general federal statutes defining dietary supplements and specifying the criteria for deeming a dietary supplement adulterated, on the one hand, and a specific state-law prohibition of products that mix kratom with non-kratom substances other than inert encapsulating agents, on the other hand. Although Congress no doubt intended the FDA's comprehensive drug-regulation scheme to preempt state tort law so that pharmaceutical manufacturers who have relied on the FDA approval process can sell their products as approved by the FDA, Congress almost certainly did not intend to bar States from banning any product that meets the general definition of a dietary supplement but not the criteria for being deemed adulterated. Indeed, the Ninth Circuit has concluded both that the reasoning in *Bartlett* is appropriately "appl[ied] . . . only in the products liability context" and also that the fact that "federal law touches [a] product in some way" cannot, without more, evince congressional intent to preempt any "state sales ban[]" of such a product. *Association des*

8

*Eleveurs de Canards et d'Oies du Quebec v. Bonta*, 33 F.4th 1107, 1116 (9th Cir. 2022). The court agrees with this persuasive authority.

### D.

The Plaintiffs also argue that it is impossible to comply with both federal law and the Kratom Regulation Act because kratom leaves must be washed and pasteurized with heated chlorinated water (or treated with a chemical or radiation substitute for that process) to kill pathogenic bacteria in order to comply with federal regulations and avoid being deemed adulterated under 21 U.S.C. § 342(f). *See* Dkt. No. 2 at 11. But doing so, the Plaintiffs contend, would result in a product that does not qualify as "pure leaf kratom"—and is thus prohibited by the Kratom Regulation Act—because washing and pasteurizing the kratom leaves would mix the kratom with heated chlorinated water, a non-kratom substance that is not an inert encapsulating agent. *See id.* at 10–12.

The Plaintiffs do not appear to represent that the heated chlorinated water used to wash and pasteurize kratom leaves actually remains present with the leaves when they are packaged and sold, however. And unless that is true, the court is skeptical of the Plaintiffs' contention that kratom leaves washed and pasteurized with heated chlorinated water *prior to packaging and sale* can plausibly be considered to fall within the scope of the prohibition of "kratom *product[s]*" that are "*mixed or packed* with a nonkratom substance." New Utah Code § 4-45-102(5)(b) (emphases added). Further, even if washed and pasteurized leaves do fall within the scope of that prohibition, the court has difficulty taking seriously the Plaintiffs' assertion that treating pure kratom leaves with radiation, rather than heated chlorinated water, to kill pathogenic bacteria would likewise amount to mixing or packing kratom with a nonkratom *substance*. *See* Dkt. No. 2 at 12.

The court need not decide these issues, however, because the Plaintiffs have not identified any product that they sell that would qualify as "pure leaf kratom" under the Kratom Regulation Act but for the fact that it is washed and pasteurized. Indeed, they attempt to demonstrate irreparable injury only with respect to the Kratom Regulation Act's potential effect on *feel free*, a product that mixes kratom with kava root, *see* Dkt. No. 2 at 4, and thus clearly does not qualify as pure leaf kratom for purposes of the Act whether or not it has been washed and pasteurized with heated chlorinated water prior to sale. For that matter, the Plaintiffs do not identify *any* other specific product sold by Botanic Tonics or any other Global Kratom Coalition sponsor, let alone any product that could be sold under the Kratom Regulation Act but for the fact that it is washed and pasteurized with heated chlorinated water. It follows that even if the Plaintiffs are correct that the Kratom Regulation Act's definition of pure leaf kratom excludes kratom that has been washed and pasteurized or treated with a chemical or radiation substitute for that process—and thus excludes all kratom leaf products that comply with federal regulations and qualify as unadulterated under the FDCA—they have not demonstrated with respect to this exclusion that they are "the object[s] of the government action" they "challenge[]," and thus have failed to show that they face any redressable injury that would flow *from this exclusion*. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992).[4]

---

[4] For the same reasons, the court need not address the Plaintiffs' argument that the possible presence of trace amounts of mitragynine pseudoindoxyl in pure leaf kratom and the scheduling of this substance would potentially bar the sale of pure leaf kratom: *feel free* plainly does not qualify as pure leaf kratom because it is mixed with kava root, and the Plaintiffs have not identified any other product they or their sponsors sell, let alone any product that would qualify as pure leaf kratom but for the scheduling of mitragynine pseudoindoxyl.

\*        \*        \*

For the foregoing reasons, Docket Number 2, Plaintiffs' Motion for Preliminary Injunction, is **DENIED**.

**IT IS SO ORDERED**.

Dated this 4th day of May, 2026.

BY THE COURT:

_____

Howard C. Nielson, Jr.
United States District Judge