Ronald F. Price (5535)
PRICE PARKINSON & KERR, PLLC
5742 West Harold Gatty Drive, Suite 101
Salt Lake City, Utah 84116
Telephone: (801) 530-2964
E-mail: ronprice@ppktrial.com

Jonathan W. Emord (Virigina Bar No. 41177) (*admitted pro hac vice*)
EMORD & ASSOCIATES, P.C.
11808 Wolf Run Lane
Clifton, VA 20124
Telephone (703) 239-8968
E-mail: jemord@emord.com

*Attorneys for Plaintiffs*

---

## UNITED STATES DISTRICT COURT DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| BOTANIC TONICS, LLC, an Oklahoma limited liability company, and GLOBAL KRATOM COALITION, INC., a Delaware non-profit corporation, | **FIRST AMENDED COMPLAINT** |
| Plaintiffs, | |
| v. | Case No. 2:26-cv-000267-HCN |
| KELLY PEHRSON, Commissioner of the Utah Department of Agriculture and Food; AMBER BROWN, Deputy Commissioner of the Utah Department of Agriculture and Food; BRANDON FORSYTH, Utah State Chemist and Director of the Utah Specialized Product Division; and DEREK BROWN, Attorney General of the State of Utah, | Judge Howard C. Nielson, Jr. Magistrate Judge Dustin B. Pead |
| Defendants. | |

Plaintiffs Botanic Tonics, LLC ("BT") and Global Kratom Coalition, Inc. ("GKC")

hereby sue Defendants Kelly Pehrson, Amber Brown, Brandon Forsyth, and Derek Brown in

their official capacities (collectively, "Officials") seeking declaratory and injunctive relief for acts that deprive Plaintiffs of their federal constitutional and statutory rights in violation of 42 U.S.C. § 1983 and pursuant to *Ex Parte Young*, 209 U.S. 123 (1908). The rights at issue are secured to Plaintiffs under the Express and Conflict Preemption Doctrines of the Supremacy Clause of the Sixth Amendment to the United States Constitution, Art. VI, Clause 2; under the Void for Vagueness Doctrine of the Due Process Clause of the Fourteenth Amendment to the United States Constitution; and under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

This action immediately follows passage of the Kratom Regulation Act (Utah Code Sections 4-45-102; 103; 104; 4-45-108; and 58-37-4) signed into law by Utah Governor Spencer J. Cox on March 26, 2026. *See* Exhibit A attached hereto. It is a pre-enforcement, as-applied, constitutional and federal statutory challenge pursuant to 42 U.S.C. § 1983 and *Ex Parte Young*, 209 U.S. 123 (1908). It is against the named Officials in their official capacities, not against the state itself.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3) because this action arises under the Constitution and laws of the United States, specifically 42 U.S.C. § 1983; the *Ex Parte Young* doctrine; the Sixth Amendment to the United States Constitution; and the Fourteenth Amendment to the United States Constitution.

2. Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to the causes of action occurred in this district, and each of the Defendants is subject to personal jurisdiction in this district.

## STANDING

3.        This is a pre-enforcement, as-applied constitutional and federal statutory challenge.  Plaintiffs suffer injury-in-fact under Article III of the U.S. Constitution because on May 6, 2026, the Kratom Regulation Act challenged here on federal statutory and constitutional grounds took effect and, thereupon, as a direct result of the statute's operation and enforcement, immediately and permanently prohibited Plaintiffs from continuing to sell in 321 Utah retail locations their combination whole kratom leaf and noble root kava dietary supplement *feel free®* CLASSIC.  In addition, the Kratom Regulation Act challenged here prohibits Plaintiffs from introducing into the Utah market Botanic Tonics' new *feel free®* Natural Leaf Kratom capsules (containing 100% pure kratom leaf).  *See* EXHIBIT B attached hereto (bottle image of *feel free®* Natural Leaf Kratom).  There are currently 66,000 capsules and 1100 units of  BT's of BT's new *feel free®* Natural Leaf Kratom product held in BT's Oklahoma plant that will be shipped to Utah for distribution for sale ifrelief is granted from this Court under Count II of this Complaint. Pure leaf kratom contains endogenous, trace amounts of mitragynine pseudoindoxyl.  The Kratom Regulation Act schedules mitragynine pseudoindoxyl as a Schedule 1 controlled substance, making any food, dietary supplement, or drug that contains it unlawful for commercial sale in Utah.  Projected losses to BT due to the statute's ban on *feel free®* CLASSIC *exceed* $10,704,428; projected losses to BT due to the statute's effective prohibition of *feel free®* Naural Leaf Kratom capsules through Schedule 1 scheduling of mitragynine pseudoindoxyl exceed $350,000.  To comply with the statute, BT has ordered removal, cessation of sales, and discontinuation of contractual Direct Sales Distributor (DSD) authorizations to sell all of BT's kratom products in Utah, effectively rendering BT and related GKC sponsor business operations non-viable and defunct in Utah.  As a result of the removal of BT product from store shelves, the

3

elimination of all advertising and promotion of BT product in Utah, the elimination of all BT product sales and in store promotions, BT has experienced a consequential loss of brand recognition, is experiencing brand dilution, and has lost store shelve space to competitors' products, resulting in a complete severance of distribution and networking connections necessary to do business in the state, rendering BT's business and GKC's sponsors' related businesses inoperable and not viable.

4.      In derogation of the Constitution and laws of the United States, the Defendants are acting under color of state law against Plaintiff BT and against Plaintiff GKC's sponsors, each of whom sold *feel free*® CLASSIC and wish to sell *feel free*® Natural Leaf Kratom dietary supplements, in ways that bar Plaintiffs from selling products in violation of Plaintiffs' rights under the Express and Conflict Preemption Doctrines of the Sixth Amendment to the United States Constitution; under the Void for Vagueness Doctrine of the Due Process Clause of the Fourteenth Amendment to the United States Constitution; and under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

5.      The Defendants' enforcement actions began on May 6, 2026, and prohibit Plaintiff BT and GKC sponsors from selling BT's *feel free*® CLASSIC and BT's *feel free*® Natural Leaf Kratom capsules at retail in Utah through 321 retail locations, resulting in a complete loss of the existence and viability of BT's Utah business and the retail revenue from sale of those perishable products.  Total compensatory damages resulting from that complete loss and from the associated sunk cost of advertising revenues in the Utah market is estimated to exceed Eleven Million Fifty-Four Thousand Four Hundred Dollars ($11,054,400).

6.      Effective May 6, 2026, BT withdrew authorization and ordered cessation of all retail and online sales of BT's *feel free*® CLASSIC in Utah.  Effective that same date, BT

4

authorized production of BT's *feel free*® Natural Leaf Kratom capsules for the Utah market but has withheld all sales and distribution in Utah in light of the scheduling provision of the Kratom Regulation Act that schedules mitragynine pseudoindoxyl. *See* EXHIBIT B.

## PARTIES

7. **BT.** Botanic Tonics, LLC, is a manufacturer, distributor, and seller of the whole leaf kratom and noble kava root dietary supplement *feel free*® CLASSIC, which has been lawfully sold in Utah since June 25, 2021. Between May 6, 2026 (the date the Kratom Regulation Act went into effect) and the present, BT has manufactured, and is holding in its Oklahoma manufacturing plant, *feel free*® Natural Leaf Kratom capsules, a 100% pure kratom dietary supplement. As of the date of this amended complaint, BT holds One Thousand One Hundred Units of that dietary supplement in its Oklahoma manufacturing plant bottled for distribution and labeled for sale in Utah, pending an order by this Court granting Count II of the Complaint. BT manufactures *feel free*® CLASSIC and *feel free*® Natural Leaf Kratom capsules at its state-of-the-art, GMP-compliant manufacturing plant at 13105 East 61st Street, Suite A, Broken Arrow, OK 74012. BT seeks to export those products from that facility to distributors in Utah to sell to retail establishments for resale to consumers. BT will not do so unless and until Utah's prohibitions on sale under the Kratom Regulation Act are held invalid. *feel free*® CLASSIC and *feel free*® Natural Leaf Kratom capsules are supported by 14 clinical trials on kratom leaf, including one on *feel free*® CLASSIC itself and one performed by the U.S. Food and Drug Administration (on the very same kratom leaf used in BT's *feel free*® CLASSIC and *feel free*® Natural Leaf Kratom capsules), all concluding that kratom leaf presents no significant or unreasonable risk of illness or injury when consumed by healthy adults according to label directions for use and across dosing levels.

8.      **GKC.**  The Global Kratom Coalition advocates for safe and responsible natural kratom use and for federal and state regulation to ensure consumer safety and access to natural kratom.  GKC sponsors sell their products, including Botanic Tonics' *feel free®* CLASSIC and Natural Leaf Kratom capsules, across the United States and are directly and adversely affected by the actions of the Defendants who effective May 6, 2026 have prohibited the sale of Botanic Tonics' *feel free®* CLASSIC and *feel free®* Natural Leaf Kratom capsules.  BT is one of GKC's sponsors as are other members who sell kratom/kava products and kratom only products that have been forced off the market by Defendants' actions.  GKC has representational standing because it advocates for its sponsors and the interests of the sponsors are advanced by the purposes of the organization, which purposes include availability to consumers of *feel free®* CLASSIC and *feel free®* Natural Leaf Kratom capsules at retail in Utah.

9.      **KELLY PEHRSON.**  Kelly Pehrson is the Commissioner of the Utah Department of Agriculture and Food (UDAF) responsible for implementing the Kratom Regulatory Act.  He is sued in his official capacity for actions under color of state law to implement that Act, which actions violate Plaintiffs' federal constitutional and statutory rights as explained hereinbelow.

10.      **BRANDON FORSYTH.** Brandon Forsyth is the Utah State Chemist and the Director of the Specialized Products Division of UDAF responsible for implementing the Kratom Regulatory Act.  He is sued in his official capacity for actions under color of state law to implement that Act, which actions violate Plaintiffs' federal constitutional and statutory rights as explained hereinbelow.

11.      **AMBER BROWN**.  Amber Brown is a Deputy Commissioner of UDAF and is responsible for implementing the Kratom Regulatory Act.  She is sued in her official capacity for

6

actions under color of state law to implement that Act, which actions violate Plaintiffs' federal constitutional and statutory rights as explained hereinbelow.

12.     **DEREK BROWN.**   Derek Brown is the Attorney General of the State of Utah and is responsible for enforcing the Kratom Regulatory Act.  He is sued in his official capacity for actions under color of state law to implement that Act, which actions violate Plaintiffs' federal constitutional and statutory rights as explained hereinbelow.

<u>**FACTUAL BACKGROUND**</u>

13.     On October 10, 2024, October 15, 2024, February 1, 2025, and June 19, 2025, BT and GKC provided Defendants Pehrson, Forsyth, and Brown with 14 peer-reviewed, published clinical trials establishing the safety of Plaintiffs' whole kratom leaf and noble kava root dietary supplement *feel free*® CLASSIC.  That evidence included a well-designed, double-blind, placebo-controlled single ascending dose clinical trial conducted by the Food and Drug Administration on whole leaf kratom ("FDA SAD Study"), the very kind used in *feel free*® CLASSIC and *feel free*® Natural Leaf Kratom capsules*,* revealing no significant or unreasonable risk of illness or injury to humans across dosing levels.  It also included a well-designed, double-blind, placebo-controlled clinical trial on BT's *feel free*® CLASSIC itself, published in a peer-reviewed journal, containing results complementary to those of the FDA SAD Study, likewise showing no significant or unreasonable risk of illness or injury from adult consumption of BT's whole leaf kratom/noble kava root combination product across dosing levels.  The results of the clinical trials were independently evaluated along with all publicly available scientific evidence on kava and kratom combinations by leading Toxicologists Dr. Robert Verkerk and Dr. Michael John Glade.  Those experts confirmed that *feel free*® CLASSIC did not present a significant or

unreasonable risk of illness or injury when consumed by healthy adults in accordance with labeling directions for use.

14.    On December 17, 2024, Jerry W. Ross of BT, Matthew Lowe of GKC, Ramsey Atallah of BT, and Yin Zou of BT had a zoom meeting with Defendants Forsyth and Pehrson where BT participants reiterated the scientific evidence in support of the safety of *feel free®* CLASSIC, seeking confirmation from Forsyth and Pehrson that enforcement action would not be taken to stop sales of the product in Utah.  Defendants Forsyth and Pehrson gave no assurance that they would not advocate or act against the product.  Subsequently, in repeated testimony before the Utah legislation, Defendants Forsyth, Pehrson, and Brown have advocated against the product, including in support of passage of the Kratom Regulation Act.

15.    In addition, prior to the June 19, 2025 meeting, Plaintiffs provided Defendants Pehrson, Forsyth, and Brown with the detailed scientific report of Toxicologist and Environmental Scientist Dr. Robert Verkerk, evaluating the safety of *feel free®* CLASSIC ingredients, wherein he not only concluded that the precise composition and quantitative amounts of ingredients in *feel free®* CLASSIC were not linked to any significant adverse effects but also that they were backed by evidence of daily safe ingestion at far higher quantitative amounts, including in foods, consumed in Southeast Asia and the Pacific Islands for hundreds of years, revealing no significant or unreasonable risk of illness or injury.  In particular, Dr. Verkerk found the noble strain of kava root not associated with any significant or unreasonable risk of illness or injury and to have been consumed safely for approximately 2,000 years as a tonic or beverage at daily dose amounts substantially higher than those in *feel free®* CLASSIC. He also found the whole leaf kratom used in *feel free®* CLASSIC (the same used in *feel free®* Natural Leaf Kratom capsules) not associated with any significant or unreasonable risk of illness

or injury and to have been consumed safely for approximately 200 years.  He concluded that BT's *feel free*® CLASSIC was as safe, if not safer than, the safest kratom products in the Utah market.

16.     At the June 19, 2025, meeting, GKC's Executive Director Matthew Lowe explained that the scientific evidence supplied to Pehrson, Forsyth, and Brown by Lowe revealed no toxicity, even at multiples of the kratom and kava per serving levels in the product, to which Forsyth and Brown offered no science in opposition.

17.     On October 3, 2025, Plaintiffs sued Defendant Pehrson, Brown and Forsyth for rules previously adopted by UDAF, alleging those rules violated their constitutional rights under 42 U.S.C. § 1983.

18.     Before the Defendants in that suit filed an answer, the Parties settled the action and the named Defendants agreed not to act against *feel free*® CLASSIC in the market based on the rules then extant and proceeded to modify those rules in ways requested by BT in formal comments to the Utah Department of Agriculture and Food that permitted BT to register and continue sales of *feel free*® CLASSIC in the Utah market over the past 5 months.  *See* Exhibit C attached hereto.

19.     On March 26, 2026, Utah Governor Spencer J. Cox signed the Kratom Regulation Act into law.  *See* Exhibit A.  In pertinent part, on pain of civil fines and criminal penalties the law:

 (1) requires that mitragynine pseudoindoxyl be listed as a Schedule I controlled substance. Utah Code § 58-37-4(2)(vii)(B) (effect. May 6, 2026).  It provides no exemption from scheduling for the minute quantities of naturally occurring mitragynine pseudoindoxyl found in kratom leaf but it does exempt from scheduling the minute

quantities of naturally occurring 7-hydroxymitragynine found in kratom leaf if no greater than 0.4% of the total kratom alkaloid composition of the product.  Utah Code § 58-37-3.4 (effect. May 6, 2026).

(2) prohibits the sale of any product "containing any part of a leaf of the plant Mitragyna speciosa" ("kratom product") unless that product:

    a. "is identifiable as plant matter or is identifiable plant matter contained in an encapsulating agent;"

    b. "is not mixed or packed with a nonkratom substance unless the nonkratom substance is an inert encapsulating agent that:"

        1. "is composed of food-grade or pharmaceutical-grade materials with no pharmacological activity;"

        2. "contains no psychoactive substances, stimulants, or adulterants; and"

        3. "serves solely to contain or deliver the plant matter;"

    c. "does not contain any kratom extract" (defined as "a preparation containing any part of the Mitragyna speciosa plant in a concentrated form");

    d. "does not contain 7-hydroxymitragyne at a level greater than 0.4% of the total kratom alkaloid composition of the product" (defined as "the total amount of all alkaloids derived from the Mitragyna speciosa plant").

Utah Code § 4-45-102(5) (effect. May 6, 2026).

    20.    Moreover, under the Kratom Regulation Act, no kratom processor or retailer may lawfully sell kratom leaf without a registration from the Utah Department of Agriculture and Food, and only existing licensed retail tobacco specialty businesses may be registered as kratom retailers.  Utah Code § 4-45-104(4) (effect. May 6, 2026).  Thus, the law

10

discriminates among retailers, granting tobacco specialty businesses a monopoly at the expense of all others.

21.     Each Defendant is responsible for ensuring compliance with and enforcing the statutory provisions of the Kratom Regulation Act that violate the Plaintiffs' federal constitutional and statutory rights.

22.     Under threat of Defendants' actions to enforce under color of state law the Kratom Regulation Act, which took effect May 6, 2026, Plaintiffs BT and GKC sponsor companies were required to stop sales of *feel free*® CLASSIC in Utah at all 321 retail establishments.  Plaintiff BT and Plaintiff GKC sponsors were forced not to sell entirely natural kratom leaf products, such as BT's *feel free*® Natural Leaf Kratom, because all kratom contains endogenous, de minimus amounts of mitragynine pseudoindoxyl and, thus, cannot lawfully be sold in Utah under the scheduling provisions of the Kratom Regulation Act.

23.     BT inventoried all *feel free*® CLASSIC at retail in Utah and determined that the immediate loss of online and offline sales of all *feel free*® CLASSIC present in the Utah market equals $ 3,285,152 annually.

24.     The action by Defendants to stop sale of BT's *feel free*® CLASSIC has resulted in a loss of a pending deal to add an additional 852 stores nationally to carry BT's *feel free*® CLASSIC, equaling a loss of $7,400,000 annually.

25.     The action by Defendants to stop sale of all BT products has also resulted in a loss of advertising revenue for advertising that could not be carried in Utah in light of the stop sale order, resulting in a loss of $19,276.

26. Total financial losses resulting from Defendants' violations of Plaintiffs federal constitutional and statutory rights will exceed Eleven Million Fifty-Four Thousand Four Hundred Dollars ($11,054,400). (.

27. Plaintiff BT also lost all of its trained Utah Direct Sales Distributors (DSDs) who, by contract, sell Plaintiff BT's kratom containing products to retail outlets, to the advantage of competitors.

28. BT is also losing brand recognition and is experiencing brand dilution due to the forced cessation of sales of BT's products and their removal from store shelves across Utah.

29. BT is also experiencing competitive injury as competing products replace BT's on store shelves across Utah.

### COUNT I:

### DEFENDANTS DEPRIVE PLAINTIFFS' RIGHTS UNDER THE PREEMPTION DOCTRINE OF THE SIXTH AMENDMENT TO THE U.S. CONSTITUTION, THEREBY VIOLATING 42 U.S.C. § 1983

30. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 29 as if fully set forth herein.

31. The Nutrition Labeling and Education Act of 1990 (NLEA) and the Dietary Supplement Health and Education Act of 1994 (DSHEA) amended the federal Food Drug and Cosmetic Act to create a comprehensive national regulatory framework for dietary supplements. Under 21 U.S.C. § 321(ff), a dietary supplement is defined as a product intended to supplement the diet that contains "*one or more* of the following dietary ingredients: (A) a vitamin; (B) a mineral; (C) an herb or other *botanical*; (D) an amino acid; (E) a dietary substance for use by man to supplement the diet by increasing the total dietary intake; or (F) a concentrate, metabolite, constituent, extract, *or combination of any ingredient described in clause (A), (B),*

12

*(C), (D), or (E)*" 21 U.S.C. § 321 (emphasis added). The federal Food Drug and Cosmetic Act thus expressly permits **combinations** of dietary ingredients, including combination botanicals, in 21 U.S.C. 321(ff).

32.    Kratom leaf is a botanical. Noble kava root is also a botanical. The Food Drug and Cosmetic Act expressly defines lawful dietary supplements as those that not only contain a single botanical, like kratom, but also those that contain **"combinations"** of botanicals, such as the combination of kratom leaf and noble kava root in *feel free*® CLASSIC. 21 U.S.C. § 321(ff).

33.    The Kratom Regulation Act directly contradicts and obstructs 21 U.S.C. § 321(ff) by prohibiting the sale of combination dietary supplements that contain a botanical, kratom leaf, and any other dietary lawful ingredient, such as the botanical noble kava root in *feel free*® CLASSIC.

34.    The federal Food Drug and Cosmetic Act contains an express preemption provision in 21 U.S.C. § 343-1 that prohibits states from establishing food labeling requirements "not identical to" those specified in federal law. See 21 U.S.C.A § 343-1. Federal regulations implementing federal labeling regulations are contained in 21 C.F.R. Part 101. In this instance, combination products are disallowed promotions of such products pursuant to the Kratom Consumer Protection Act as amended by the Kratom Regulation Act. The federal requirements concerning labeling of combination dietary supplement products are prohibited by the Kratom Consumer Protection Act, Utah Code Annotated, Title 4, Chapter 45 (Sections 4-45-101 through 4-45-108) as amended by the Kratom Regulation Act, Utah Code Sections 4-45-102; 103; 104; 4-45-108; and 58-37-4, in direct violation of the express preemption provision in 21 U.S.C. §

343-1 and FDA implementing regulations in 21 C.F.R. Part 101, in derogation of the comprehensive federal regulatory schema for dietary supplement labeling.

35.     Because federal law expressly permits combinations of dietary ingredients through the Food Drug and Cosmetic Act's definition of dietary supplements, 21 U.S.C. § 321(ff), the Kratom Regulation Act prevents effectuation of the express provisions of Section 321(ff), frustrating a plain and direct statutory requirement of Congress, thus violating Express Preemption under the Sixth Amendment to the United States Constitution.

36.     The Kratom Regulation Act violates the Conflict Preemption Doctrine by contradicting federal statutory law and establishing obstacles to compliance with Food and Drug Administration implementing regulations.  In Utah Code § 4-45-102(5)(b) (effect. May 6, 2026), the Kratom Regulation Act denies consumers access to botanical kratom when combined with other lawful dietary ingredients contrary to 21 U.S.C. § 321(ff) and denies access to such products for which there is clinical trial data establishing that they do not present a significant or unreasonable risk of illness or injury contrary to 21 U.S.C. § 342(f).  The Kratom Regulation Act prevents Plaintiff BT and Plaintiff GKC sponsors from complying with the dietary supplement adulteration standard in 21 U.S.C. §342(f) as well as federal Good Manufacturing Practices regulations for dietary supplements under 21 C.F.R. §§ 111.15(b); 111.15(c)(1); 111.15(c)(3); 111.70(b)(3); and 111.70(e).  The Kratom Regulation Act prohibits the combination of kratom with any "nonkratom substance."  Utah Code § 4-45-102(5)(b) (effect. May 6, 2026).  The only exception is for "an inert encapsulating agent" if and only if five conditions are satisfied.   Utah Code § 4-45-102(5) (effect. May 6, 2026).  The bill defines allowable "inert" encapsulating agents as ones which, among other requirements, must be "food-grade or pharmaceutical-grade materials with no pharmacological activity" and serve only "to contain or deliver the plant

14

matter." *Id.* That Kratom Regulation Act encapsulating agent exception prohibits sterilization (including pasteurization) of kratom leaf, which involves pharmacological activity and use of a nonkratom substance to achieve sterilization (including pasteurization) rather than solely serve "to contain or deliver the plant matter." It thereby prohibits sterilization (including pasteurization) of kratom leaf required under 21 U.S.C. § 342(f) and FDA's Good Manufacturing Practice regulations for dietary supplements under 21 C.F.R. §§ 111.15(b); 111.15(c)(1); 111.15(c)(3); 111.70(b)(3); and 111.70(e).

37.    Federal authorities regulate dietary supplement safety through adulteration standards under 21 U.S.C. § 342(f), which deems supplements adulterated if they present "a significant or unreasonable risk of illness or injury." 21 U.S.C. § 342(f). In pertinent part, that enabling Act has been translated by FDA into Good Manufacturing Practice regulations, among them those of particular relevance here: 21 C.F.R. §§ 111.15(b); 111.15(c)(1); 111.15(c)(3); 111.70(b)(3); and 111.70(e).

38.    Additionally, under the Kratom Regulation Act, the statute violates the Conflict Preemption Doctrine by prohibiting kratom products containing non-kratom ingredients, including heated chlorinated water essential to sterilization (including pasteurization) of kratom leaf, which in turn is essential to compliance with federal adulteration standards under 21 U.S.C. § 342(f) and federal Good Manufacturing Practice requirements under 21 C.F.R. §§ 111.15(b); 111.15(c)(1); 111.15(c)(3); 111.70(b)(3); and 111.70(e), thus making it impossible for Plaintiff BT and Plaintiff GKC sponsors to comply with both state and federal requirements. Residual chlorine remains in finished kratom after sterilization or pasteurization with chlorinated water. Further, the Kratom Regulation Act thus stands as an obstacle to accomplishment and execution

15

of the full purposes and objectives of Congress as they pertain to combination dietary supplements and Good Manufacturing Practices compliant kratom products.

39.    Violating Express and Conflict Preemption Doctrines under the Sixth Amendment to the U.S. Constitution in ways that violate Plaintiff BT's' rights, and those of Plaintiff GKC sponsors, to sell their products in Utah, the Kratom Regulation Act as enforced by Defendants violates the *Ex Parte Young* doctrine and 42 U.S.C. § 1983 and should be declared invalid, therefore, and the Defendants enjoined from enforcing the law.

## COUNT II

**DEFENDANTS DEPRIVE PLAINTIFFS' RIGHTS TO DUE PROCESS UNDER THE VOID FOR VAGUENESS DOCTRINE OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION, THEREBY VIOLATING 42 U.S.C. § 1983**

40.    Plaintiffs incorporate by reference the allegations contained in paragraphs through 39 as if fully set forth herein.

41.    The Kratom Regulation Act prohibits the combination of kratom with any "nonkratom substance." Utah Code § 4-45-102(5)(b) (effect. May 6, 2026). The only exception is for "an inert encapsulating agent" if and only if five conditions are satisfied. Utah Code § 4-45-102(5) (effect. May 6, 2026). The bill defines allowable inert encapsulating agents as ones which meet all of the following requirements: "food-grade or pharmaceutical-grade materials **with no pharmacological activity**;" "no psychoactive substances, stimulants or adulterants;" serving **solely "to contain or deliver the plant matter;"** not containing "any kratom extract" [i.e., any part of the kratom leaf in concentrated form]; <u>and</u> not containing "7-hydroxymitragynine at a level greater than 0.4% of the total kratom alkaloid composition" [i.e., the total amount of all alkaloids derived from kratom leaf]. *Id.*

16

42. The exception compels manufacturers of kratom leaf products to make products that lack reliable safety, that are not free of harmful bacteria, and that contain alkaloid levels not reliably beneath those which cause harm, thus violating federal adulteration standards in 21 U.S.C. § 342(f) and FDA implementing Good Manufacturing Practice regulations in 21 C.F.R. §§ 111.15(b); 111.15(c)(1); 111.15(c)(3); 111.70(b)(3); and 111.70(e).

43. In the ordinary course of Good Manufacturing Practice-compliant kratom leaf processing, to kill 99.99 percent of bacteria in the hydroscopic plant, heated chlorinated water is used to wash and sanitize (or pasteurize) pulverized kratom leaf.  Chlorinated water is not used "solely to contain or deliver the plant matter."  The sanitization (and pasteurization) process with chlorinated water oxidizes organic molecules and inactivates enzymes, both of which are "pharmacological activities."  The sterilization (and pasteurization) process with chlorinated water leaves residual chlorine in kratom finished products sold at retail.  Thus, the Kratom Regulation Act prohibits safe means essential to compliance with federal adulteration law under 21 U.S.C. § 342(f) and federal Good Manufacturing Practice requirements under 21 C.F.R. §§ 111.15(b); 111.15(c)(1); 111.15(c)(3); 111.70(b)(3); and 111.70(e), by which kratom leaf is routinely rendered free of harmful bacteria.  The Kratom Regulation Act thus frustrates implementation and effectuation of federal law, contradicting federal adulteration requirements and threatening injury to the public, thus making Plaintiffs' compliance with both state and federal law impossible.

44. Substitutes for chlorinated water and heat to achieve plant sterilization and pasteurization involve use of more caustic chemicals or radiation, which likewise are not "solely to contain or deliver the plant matter," and which also have "pharmacological activity" essential to kill pathogenic bacteria; some of which leave behind adulterants (and are thus not safe or

lawful alternatives).  Thus, the Kratom Adjustments Act prohibits safe, essential, and required means under federal adulteration law in 21 U.S.C. § 342(f) and in FDA Good Manufacturing Practice implementing regulations in 21 C.F.R. §§ 111.15(b); 111.15(c)(1); 111.15(c)(3); 111.70(b)(3); and 111.70(e), by which kratom leaf is sterilized, pasteurized, and rendered free of 99.99% of pathogenic bacteria, thus preventing implementation of and contradicting federal adulteration laws.

45.     Mitragynine pseudoindoxyl occurs naturally in and is endogenous to kratom leaf, but in de minimis amounts, which amounts are not associated with adverse effects in the human body.  The Kratom Regulation Act causes mitragynine pseudoindoxyl, regardless of amount, to be scheduled as a Schedule I controlled substance, rendering any kratom leaf containing de minimis amounts that exhibit no adverse effects in the human body to be prohibited, thus defeating the aim of the bill to allow natural kratom leaf dietary supplements to be sold in Utah and conflicting directly with the federal standard for dietary supplement adulteration in 21 U.S.C. § 342(f), which defines adulteration in a dietary supplement as requiring proof that a supplement "presents a significant or unreasonable risk of illness or injury" when consumed according to label directions for use or, in the absence thereof, according to common use.

46.     The provisions of the Kratom Regulation Act that ban combination dietary supplements also violate the Void for Vagueness Doctrine of the Fourteenth Amendment to the United States Constitution.  They violate both the fair notice and ambiguousness elements of the Void for Vagueness standard.  A person of ordinary intelligence cannot determine whether a particular kratom product is lawful because the same product could simultaneously fall within the prohibitory provisions of the statute and the permissible provisions of the statute, depending on the predilection of the individual enforcement officer.  Every responsible seller of kratom leaf

product that complies with federal adulteration law and FDA implementing regulations will employ antibacterial interventions that necessarily violate the encapsulation agent exception provisions in the combination product standard of the Kratom Regulation Act.  Thus, it is impossible for the regulated class to know whether any particular kratom product will be acted against by Utah enforcement authorities.  All kratom products in compliance with federal law are prohibited by the Kratom Regulation Act.  Enforcement of the Kratom Regulation Act is, necessarily, an exercise of arbitrary discretion by the Defendants.  In light of the conflicting and ambiguous provisions, enforcement authorities, of necessity, exercise arbitrary discretion in enforcement as to whether the exception applies or not in each particular case and whether action will be taken to prohibit a kratom product based on the presence of endogenous mitragynine pseudoindoxyl in kratom.

47.     Thus, the Kratom Regulation Act fails in this regard to provide fair notice of prohibited conduct, which notice is required by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  In addition, the law's ambiguousness invites arbitrary enforcement.  The contradictions in the law (among them, its apparent aim of ensuring consumer access to kratom leaf while prohibiting essential methods for sanitization and pasteurization of kratom leaf to avoid adulteration under federal law) requires enforcement officials to proceed without meaningful standards, permitting the exercise of unbridled discretion involving imposition of even criminal penalties, also prohibited under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

48.     The Kratom Regulation Act thereby violates the Plaintiffs' right to Due Process under the Fourteenth Amendment to the United States Constitution Void for Vagueness Doctrine.

## COUNT III:

### DEFENDANTS DEPRIVE PLAINTIFFS' RIGHTS TO EQUAL PROTECTION UNDER THE FOURTEENTH AMENDMENT, THEREBY VIOLATING 42 U.S.C. § 1983

49.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 48 as if fully set forth herein.

50.     The interest of Utah in enacting the Kratom Regulation Act is purportedly to protect consumers from injury.

51.     The means chosen to that end involve drawing arbitrary and unscientific distinctions between kratom alone (allowed) and kratom combined with any "nonkratom substance" (disallowed), which non-kratom substances include lawful, and even health enhancing, dietary ingredients that either do not adversely affect the underlying safety profile of kratom, may even reduce risks associated with kratom by enhancing overall health or reducing potential adverse effects, or are essential to sterilization (including pasteurization) of kratom. The Kratom Regulation Act in its "encapsulating agent" exception disallows sterilization (including pasteurization) methods required under federal law to render kratom fit for consumption, namely those required under 21 U.S.C. § 324(f) implementing Good Manufacturing Practice regulations in 21 C.F.R. §§ 111.15(b); 111.15(c)(1); 111.15(c)(3); 111.70(b)(3); and 111.70(e).  There is no rational connection between, on the one hand, limiting dietary supplements to kratom leaf alone, and, on the other, protecting consumers from injury (indeed, doing so removes all combinations with "nonkratom substances" that reduce adverse effects of kratom).  There is also no rational connection between, on the one hand, preventing use of sterilization and pasteurization methods and, on the other hand, protecting consumers from injury (indeed, injury to the consuming public invariably results when, as here, those

20

methods are disallowed).  There is no rational connection between, on the one hand, scheduling all mitragynine pseudoindoxyl and, on the other hand, allowing regulated pure kratom leaf sales when mitragynine pseudindoxyl is endogenous in kratom.  Thus, the Kratom Regulation Act violates the Equal Protection Clause of the United States Constitution as applied to BT's whole leaf kratom and noble kava root dietary supplement (*feel free*® CLASSIC) and Plaintiff BT's pure kratom leaf dietary supplement (*feel free*® Natural Leaf Kratom capsules).

52.     That irrationality is compounded by the fact that the Kratom Regulation Act prevents compliance with federal adulteration standards that safeguard the public; the Kratom Regulation Act includes "encapsulation agent" provisions that disallow use of safe means to sterilize, pasteurize, and remove 99.99 percent of bacteria from raw kratom leaf essential to public safety; and the Kratom Regulation Act effectively bans through scheduling enforcement all pure leaf kratom because of the ubiquitous endogenous presence of de minimis amounts of mitragynine pseudoindoxyl in natural kratom leaf.

53.     The Kratom Regulation Act thus violates Plaintiffs' Fourteenth Amendment rights to Equal Protection of the laws under the Fourteenth Amendment to the United States Constitution.

**RELIEF REQUESTED**

Plaintiffs request that this Court enter judgment in their favor under the *Ex Parte Young* doctrine and 42 U.S.C. § 1983, declare the Kratom Regulation Act unconstitutional under the Express and Conflict Preemption Doctrines of the Sixth Amendment; the Void for Vagueness Doctrine of the Fourteenth Amendment; and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and enjoin Defendants from taking any action to enforce the Kratom Regulation Act by granting preliminary and permanent injunctive relief,

pursuant to Federal Rule of Civil Procedure 65 and DUCivR 7-1(a)(4)(C).  Plaintiffs seek such other and further relief as the Court deems just and proper.

DATED this 15th day of May 2026.

PRICE PARKINSON & KERR, PLLC


 /s/  Ronald F. Price
Ronald F. Price


EMORD & ASSOCIATES, P.C.


 /s/ Jonathan W. Emord
Jonathan W. Emord

*Attorneys for Plaintiffs*

22

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of May 2026, the foregoing **FIRST AMENDED COMPLAINT** was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ Ronald Price