Ronald F. Price (5535)
PRICE PARKINSON & KERR, PLLC
5742 West Harold Gatty Drive, Suite 101
Salt Lake City, Utah 84116
Telephone: (801) 530-2964
E-mail: ronprice@ppktrial.com

Jonathan W. Emord (Virigina Bar No. 41177) (*admitted pro hac vice*)
EMORD & ASSOCIATES, P.C.
11808 Wolf Run Lane
Clifton, VA 20124
Telephone (703) 239-8968
E-mail: jemord@emord.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| BOTANIC TONICS, LLC, an Oklahoma limited liability company, and GLOBAL KRATOM COALITION, INC., a Delaware non-profit corporation.<br><br>Plaintiffs,<br><br>v.<br><br>KELLY PEHRSON, Commissioner of the Utah Department of Agriculture and Food; AMBER BROWN, Deputy Commissioner of the Utah Department of Agriculture and Food; BRANDON FORSYTH, Utah State Chemist and Director of the Utah Specialized Product Division; and DEREK BROWN, Attorney General of the State of Utah,<br><br>Defendants. | **SECOND MOTION FOR PRELIMINARY INJUNCTION**<br><br>Case No. 2:26-cv-00267-HCN<br><br>Judge Howard C. Nielson, Jr.<br><br>Magistrate Judge Dustin B. Pead |

## RELIEF SOUGHT AND SUPPORTING GROUNDS

Plaintiff Botanic Tonics, LLC ("BT") and Global Kratom Coalition, Inc. ("GKC"), pursuant to Fed. R. Civ. P. 65(a) and DUCivR 7-1(a)(4)(C); 7-1(e)(2), hereby submit this Second Motion for Preliminary Injunction, seeking to enjoin the Defendants in their official capacities pursuant to *Ex Parte Young*, 209 U.S. 123 (1908) and 42 U.S.C. § 1983, from enforcing the recently adopted Kratom Regulation Act ("KRA"), signed by Governor Spencer J. Cox on March 26, 2026, Utah Code Sections 4-45-102; 103; 104; and 108; and 58-37-4 (hereinafter, "KRA").[1]  The Defendants' enforcement of that law will violate Plaintiffs' federal civil rights protected under 42 U.S.C. § 1983 by forcing Plaintiffs, in violation of the Fourteenth Amendment Void-for-Vagueness Doctrine, to comply with a law that at once purports to allow the sale of pure kratom leaf dietary supplements but simultaneously makes that sale impossible by scheduling, as a Schedule 1 substance (subject to criminal penalties if held, distributed, or sold in Utah[2]), mitragynine pseudoindoxyl (MTP), which is endogenous in pure kratom leaf.[3]

This motion satisfies Plaintiffs' burden of proof by establishing, as a matter of law, that Plaintiffs: (1) have a substantial likelihood of success on the merits of their as-applied claim that the KRA violates the Fourteenth Amendment Void-for-Vagueness Doctrine; (2) suffer immediate, substantial, continuing and irreparable damage due to the KRA's effective statutory prohibition (commenced May 6, 2026) on introduction into the Utah market (holding,

---

[1] A copy of the KRA is attached as Exhibit A.

[2] *See* Utah Code Ann. § 58-37-8 (first time offences are second degree felonies punishable by 1 to 15 years in prison and up to $10,000 in fines).

[3] The presence of MTP in kratom is not disputed by the Defendants. *See also* Supplemental Declaration of Botanic Tonics, LLC Chief Science Officer Ramsey Atallah, dated May 19, 2026 ("Atallah Dec.") at ¶ 6, attached hereto as Exhibi B; Declaration of Dr. Robert Verkerk, dated April 20, 2026,  at ¶ 5, previously filed as ECF 27-1, and attached hereto as Exhibit C.

distribution, and sale there) of Plaintiffs' pure kratom leaf dietary supplement, *feel free*® Natural Leaf Kratom dietary supplement;[4] (3) are favored by the equities because the threatened actual injury to Plaintiff/movants outweighs the speculative and theoretical "injuries" of the Defendants from enjoining the KRA (in light of the extant Utah Kratom Consumer Protection Act, which already prohibits the sale of any form of kratom that is injurious to consumers[5]); and (4) do not offend the public interest, but support it, by enjoining a contradictory state law which fails to provide those affected with adequate notice of what is prohibited and what is not and which is inherently ambiguous, it both authorizing pure kratom sale and effectively prohibiting it by scheduling a chemical endogenous to kratom, MTP.

**STANDING FOR THIS AS-APPLIED CHALLENGE UNDER *EX PARTE YOUNG* AND 42 U.S.C. § 1983**

This motion involves an as-applied constitutional and statutory challenge under *Ex Parte Young*, 209 U.S. 123 (1908); the Fourteenth Amendment Due Process Clause, U.S. Const. Amend. 14, Sect. 1 (and, more particularly, the Void-for-Vagueness Doctrine thereunder); and 42 U.S.C. § 1983. It is directed against the Defendants in their official capacities, not against the state of Utah. Plaintiffs suffer injury-in-fact under Article III of the U.S. Constitution because since the May 6, 2026 KRA effective date, and due to the express language of the KRA's MTP scheduling provision, Plaintiffs have not been lawfully allowed to introduce into Utah, market, distribute, and sell there Plaintiffs' pure kratom product, *feel free*® Natural Leaf Kratom.

---

[4] *See* Declaration of Cameron Korehbandi, dated May 18, 2026 ("Korehbandi Dec.") at ¶¶ 3-4, attached hereto as Exhibit D; Bottle and label for BT's *feel free*® Natural Leaf Kratom dietary supplement, attached hereto as Exhibit E..

[5] *See, e.g.,* Utah Code Ann. § 4-45-108 (eff. May 14, 2019).

Plaintiffs' projected losses due to the prohibition on that introduction, marketing, distribution, and sale is approximately $370,000.[6] Moreover, it involves real but inestimable injury effected by precluding the product from appearing on store shelves while having forced the removal of all other kratom products sold by Plaintiff from 321 Utah retail locations, thus causing a loss of brand recognition and brand dilution and inviting competing products to replace Plaintiffs' on store shelves. The removal also causes Plaintiffs to suffer competitive injury as competing products replace Plaintiffs' in Utah commerce. Finally, it forces abrogation by operation of law of Plaintiffs' contracts with Plaintiffs' independent contracting marketers and sellers, its Direct Sales Distributors (DSDs) because it precludes them from holding, distributing, and selling Plaintiffs' kratom products, including Plaintiffs' pure kratom *feel free*® Natural Leaf Kratom.[7]

The named Defendants are each duty bound and responsible for enforcement of the KRA's statutory provisions.

Kelly Pehrson is the Commissioner of the Utah Department of Agriculture and Food (UDAF). In that capacity, he determines who may be registered to sell kratom in Utah and determines what regulations shall be applied and what regulatory actions shall be taken to enforce the KRA. Pehrson is powerless to defy, and is obliged to implement, the statutory provisions requiring the scheduling of all substances containing MTP, including all pure kratom.

Brandon Forsyth is the Utah State Chemist and Director of the Specialized Products Division of UDAF. In that capacity, he will aid enforcement by determining whether products

---

[6] Korehbandi Dec., ¶¶ 6-7.
[7] Korehbandi Dec., ¶ 11.

comply with the KRA. Forsyth is powerless to defy, and is obliged to implement, the statutory provisions requiring the scheduling of all substances containing MTP, including all pure kratom.

Amber Brown is a Deputy Commissioner of UDAF. In that capacity, she will help determine which companies should be excluded from registration and steps to implement regulations adopted to enforce the KRA. Brown is powerless to defy, and is obliged to implement, the statutory provisions requiring the scheduling of all substances containing MTP, including all pure kratom.

Derek Brown is the Attorney General of the State of Utah. In that capacity, he will cause legal actions, including prosecution, to be taken against companies identified as in violation of the KRA. Brown is powerless to defy, and is obliged to implement, the statutory provisions requiring the scheduling of all substances containing MTP, including all pure kratom.

## **FACTUAL BACKGROUND**

In order to comply with the KRA, Plaintiff BT has caused 1100 units of pure kratom to be produced, labeled, and prepared for shipment to Utah for distribution and sale. The product, *feel free*® Natural Leaf Kratom, contains 100% pure kratom.[8] Testing reveals, and scientific evidence supports, that all "kratom is known to contain trace, *de minimis* amounts of mitragynine pseudoindoxyl, which is both a trace kratom alkaloid found in ultra low levels (<5ppm) and a

---

[8] Korehbandi Dec. at ¶¶3-4.

metabolite of mitragynine in the body."[9]  Defendants do not contest this science, and concede the presence of MTP in kratom.[10]

On March 26, 2026, Governor Cox signed the KRA. The KRA became effective on May 6, 2026. Plaintiffs bring this motion on May 19, 2026, within days after the effective date of the law. Included within the KRA's provisions is a carve out from scheduling for 7-hydroxymitragynine when naturally occurring in pure kratom if no greater than 0.4% of the toal kratom alkaloid composition of the product (it naturally occurs in minute amounts).[11].  But the KRA includes no such carve out from scheduling for MTP. Rather, under the KRA, any amount of MTP is a Schedule 1 Substance[12],  rendering kratom containing MTP, regardless of amount, criminally unlawful to hold, distribute, or sell in Utah.

Under the KRA, BT's *feel free®* Natural Leaf Kratom while a pure kratom product within the meaning of the KRA, is nevertheless prohibited from entering the Utah market (from being held, distributed, or sold in Utah) because it contains minute amounts of MPI.[13]

---

[9] Atallah Dec., at ¶ 6; *see also* Verkerk Dec., at ¶ 5 ("It should be noted that natural kratom leaf typically contains trace (non-pharmacological) amounts of both 7-OH and mitragynine pseudoindoxyl, the former being an oxidation product of mitragynine (MIT), the latter an oxidative rearrangement of MIT, trace levels of which have been associated with oxidative reactions induced by the presence of microorganisms such as fungi present on kratom leaf (Zarembo JE, Douglas B, Valenta J, Weisbach JA, Metabolites of mitragynine. *J Pharma Sci* 1974; 63(9): 1407-1415).").

[10] *See, e.g.,* Defendants' Answer [ECF 33], ¶ 45.

[11] *See* Utah Code § 58-37-3.4 (effect. May 6, 2026).

[12] *See* Utah Code § 58-37-4(2)(vii)(B) (effect. May 6, 2026).

[13] *See* Atallah Dec., at ¶¶ 11-12, where Mr. Atallah confirms that kratom sources for inclusion in *feel free®* Natural Leaf Kratom when tested contained minute amounts of MPI, an unremarkable find because MPI in such minute quantities is endogenous to kratom in minute amounts (*see* Defendants' admission in their Answer to the Complaint at ¶ 45 ("Defendants admit that de minimis amounts of mitragynine pseudoindoxyl may occur naturally in kratom leaf*"*).  When less exacting HPLC testing methods are used, MTP appears in some kratom leaf samples and not others, at random.  However, when more exacting HPLC testing is used, such as that employed by BT, MPI appears in virtually every leaf sample and is thus present in finished products. *See*

BT is pepared to send its *feel free*® Natural Leaf Kratom product to distributors for sale in Utah. However, because MTP is endogenous in all kratom, and because the State of Utah has scheduled MTP as a controlled substance, BT has not, and will not, ship its *feel free* ® Natural Kratom Leaf until, as applied to its natural leaf kratom, the vague law has been stricken.[14]

## ARGUMENT

As the Court is aware, to obtain a preliminary injunction, the moving party must establish the following four elements: "(1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harm ... the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest".[15] Plaintiffs submit that all four elements are satisfied and that this motion should, therefore, be granted.

### I.   PLAINTIFFS HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

#### A.   THE KRA IS VOID FOR VAGUENESS

Both 7-hydroxymitragynine and MTP exist in minute quantities in pure kratom. *See* Exhibits B and C.  In the KRA, the Utah legislature carved out from its scheduling of 7-hydroxymitragynine that chemical compound when naturally occurring in pure kratom, but it did do the same for MTP. Instead, it made MTP a Schedule 1 substance regardless of amount and

---

Atallah Dec., at ¶¶ 11-12) and the scientific literature reflects that MTP is endogenous to kratom leaf, *see id.* at ¶ 8. It is not clear that the state of Utah, or more particularly the Utah Department of Agriculture and Food, employs the most exacting HPLC testing technology.
[14] Korehbandi Dec., ¶ 11.
[15] *NetChoice, LLC v. Reyes*, 748 F.Supp.3d 1105, 1119 (D. Utah 2024) (quoting *Leachco, Inc. v. Consumer Prod. Safety Comm'n*, 103 F.4th 748, 752 (10th Cir. 2024) (quoting *Gen. Motors Corp. v. Urb. Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007)*)).

regardless of MTP's endogenous presence in pure kratom.  By so doing, the KRA, while purporting to authorize the marketing, sale, and distribution of pure kratom, gave law enforcement boundless discretion to criminally prosecute the holder, distributor, and seller of pure kratom. Indeed, scheduling bears with it a strong legal imprimatur in favor of consistent, thorough and effective enforcement, particularly to rid the market of Schedule 1 substances (the same category that includes heroin).[16]

The KRA is thus confoundingly internally inconsistent— purporting to permit pure kratom sale while causing MTP endogenous in pure kratom to be a Schedule 1 substance. In *Grayned v. City of Rockford*, 408 U.S. 104, 108-109 (1972) and *Kolender v. Lawson*, 461 U.S. 352, 357-358 (1983), the Supreme Court established a two-prong test to determine if a law is void for vagueness under the Due Process Clause of the Fourteenth Amendment. That test is applied by the Tenth Circuit.[17]

Under the test, a statutory contradiction such as that present in the KRA violates Due Process because it (1) fails to provide ordinary people fair notice of what conduct is permitted and what is prohibited and (2) lacks a clear enforcement standard, thus, by default, imparting unlimited discretion to regulators and prosecutors. The Supreme Court put it this way in *Johnson v. U.S., 576 U.S. 591, 595 (2015)*: "the Government violates [the Void for Vagueness Doctrine of the Fourteenth Amendment] by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement."

---

[16] *See* Utah Code § 58-37-4(2)(ii)(k).
[17] *See United States v. Corrow*, 119 F.3d 796, 802 (10th Cir. 1997); *United States v. Lesh*, 107 F.4th 1239, 1247 (10th Cir. 2024).

A statute is unconstitutionally vague if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what the law permits and what it forbids, and it is unconstitutionally vague if it is so lacking in clarity, so devoid of guidance, as to convey a grant of arbitrary and discriminatory discretion to enforcement authorities.[18]   That is the case here under the KRA. The KRA leads people of ordinary intelligence to believe pure kratom legal in Utah[19], even causing the Utah Department of Agriculture and Food to implement regulations to register pure kratom consistent with the statute.[20]   Yet, the KRA unequivocally, and without exception, schedules all MTP as Schedule 1 substances, creating an impenetrable statutory barrier to the marketing and sale of kratom in Utah and subjecting those who dare do so to proceed in peril, to risk criminal prosecution at the whim or caprice of enforcement authorities, who need only recite the ubiquitous presence of MTP, a Schedule 1 substance, to commence prosecution. This is precisely the trap for the unwary the Supreme Court means to forbid in its Void for Vagueness Doctrine precedent.

In the landmark Void for Vagueness case *Grayned,* the Supreme Court explained that "vague laws may trap the innocent by not providing fair warning" and that a "vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on

---

[18] *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982); *Ward v. Utah*, 398 F.3d 1239, 1251 (10th Cir. 2005).

[19] *See, e.g., Legislature passes restrictions on the sale of kratom product in Utah*, Deseret News, March 5, 2026 ("The final version of the bill that passed would make it so only pure kratom leaf can be purchased in Utah") (available at https://www.deseret.com/utah/2026/03/04/kratom-manufacturing-changes-made/); *Synthetic kratom, or 7-OH, soon banned in Utah* ("Whole-leaf kratom will still be available in Utah") (available at https://www.ksl.com/article/51475882/synthetic-kratom-or-7-oh-soon-banned-in-utah?utm_source=newsletter&utm_medium=email&utm_campaign=news&utm_content=utah).

[20] *See, e.g.,* Utah Admin. Code R. 70-580.

an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application."[21]

The vagueness here is subject to strict scrutiny because scheduling places it in the criminal context. *In Village of Hoffman Estates,* the Supreme Court held criminal statutes — such as the criminal scheduling provisions for MTP— receive strict scrutiny because "the consequences of imprecision [in civil statutes] are qualitatively less severe."[22] In *Corrow*, the Tenth Circuit placed high demands on criminal statutes, such as the scheduling of MTP, ruling that a penal statute must define the criminal offense definitively or ordinary people will not understand what conduct is prohibited and the law would encourage arbitrary and discriminatory enforcement.[23] The Tenth Circuit has explained that "a legislature [must] establish minimal guidelines to govern law enforcement."[24] In *Lesh*, the Tenth Circuit held: "criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed."[25] Here, the Utah legislature failed its most basic constitutional duty. The KRA scheduling of MTP gives no guidance whatsoever to law enforcement, enabling enforcers at their whim to prosecute any pure kratom product seller even if registered by UDAF; indeed, the incentives for prosecution are great because of the strong imprimatur for enforcement attendant to the scheduling laws.

In this Court's recent memorandum decision denying Plaintiff's initial motion for preliminary injunction (ECF 28), the Court acknowledged "that the possible presence of trace

---

[21] 408 U.S. at 108-109.
[22] 455 U.S. at 499.
[23] 119 F.3d at 802.
[24] *Ward,* 398 F.3d at 1251.
[25] 107 F.4th at 1247.

10

amounts of mitragynine pseudoindoxyl in pure leaf kratom and the scheduling of this substance would potentially bar the sale of pure leaf kratom."[26] However, the Court did not reach the constitutional question, as the Plaintiffs had not squarely presented that question, as they do now, in that initial motion for preliminary injunction (which motion was limited to the issue of federal pre-emption).

The circumstances here are analogous to those in _U.S. v. Forbes_, 806 F.Supp. 232 (D. Colo. 1992).  There, the court held the federal controlled substance analogue definition unconstitutionally vague as applied to alphaethyltryptamine (AET).  It was "undisputed that there is no scientific consensus whether AET has a chemical structure that is substantially similar to DMT or DET" and therefore "a person of reasonable intelligence faced with these facts must necessarily guess whether AET is a controlled substance analogue."[27] The manufacturer was left to guess whether its conduct would be prosecuted by law enforcement, akin to the kratom seller here arising from the scheduling of MTP (endogenous in pure kratom) while purporting to permit sale of pure kratom.

The arbitrary enforcement prong of the void for vagueness doctrine asks whether the law guides law enforcement to prevent subjective, discriminatory prosecution. As the Tenth Circuit has stated, "the more important aspect of vagueness doctrine is the requirement that a legislature establish minimal guidelines to govern law enforcement."[28] Rather than establish minimal guidelines to govern law enforcement, the KRA establishes no guidelines at all.  MTP scheduling creates an acute arbitrary enforcement problem: endogenous in kratom

---

[26] _Memorandum Decision and Order Denying Motion for Preliminary Injunction_ (ECF 28) at 10, n.4.
[27] 806 F.Supp. at 237-238.
[28] _Ward_, 398 F.3d at 1251 (quoting _Kolender v. Lawson_, 461 U.S. 352, 357-58 (1983)).

leaf, *every* kratom seller is technically in violation of the law and may be prosecuted whenever a law enforcement agent so desires.  Enforcement is entirely a matter of arbitrary, prosecutorial discretion. The government could choose to prosecute any pure kratom seller at random, with the KRA providing no objective standards for deciding which pure kratom transactions to pursue and which not.  The Supreme Court has strongly condemned this type of of unbridled discretion, making it clear that when a law permits "policemen, prosecutors, and juries to pursue their personal predilections" and "where inherently vague statutory language permits such selective law enforcement, there is a denial of due process." [29] In short, under the KRA, no registered seller of pure kratom can ever rest assured that enforcement authorities will not elect at any point in time to criminally prosecute the seller on the basis of MTP in pure kratom.

**B.  VOID FOR VAGUENESS INFECTS THE ENTIRE KRA, COMPELLING THAT THE ENTIRE ACT BE ENJOINED AS AGAINST PLAINTIFFS**

Once the Court holds the KRA void for vagueness, it must then decide if the entire Act must be enjoined or just MTP scheduling.  The Defendants in their opposition brief to the prior motion for preliminary injunction identified the restrictive provisions in the KRA as part of an overall legislative effort to severely limit access to kratom.  In Defendants' hyperbole (which

---

[29] *Smith v. Goguen,* 415 U.S. 566, 575 (1974). *See also Lesh,* 107 F.4th at 1247; *Forbes,* 806 F.Supp. at 236-238.

reflects the Legislature's intent[30]), "kratom kills."[31] The legislature rejected the overwhelming scientific evidence shared with the Defendants years ago: that leaf kratom does not present a significant or unreasonable risk of illness or injury when consumed by healthy adults as directed.[32]  It at first proposed to ban kratom entirely but backtracked from that position in favor of the KRA only because it severely restricted kratom sales through a combination of strictures.

The legislature chose to limit kratom to tobacco sales facilities; to ban all synthetics, concentrates, extracts and nonkratom substances mixed with kratom; and to schedule endogenous chemical compounds contained in kratom leaf, one entirely and the other to the extent it exceeded the de minimis amounts present in kratom leaf.[33]  That plain policy preference for employing not one but a combination of strictures defines the legislative scheme, giving legislators who insisted on a ban comfort to proceed with the KRA.  The legislature reinforced its desire for all of the strictures by failing to include a severability clause in the KRA.

Severability analysis is governed by state law, not federal common law.[34] A federal court will severe a part of a state statute rather than the whole *only* if the legislative history *supports* "a

---

[30] *See, e.g.,* Senate Labor and Business Committee Hearing, 1/26/26 ("Senate Hearing"), Testimony of Brandon Forsyth, at 01:16:53-01:17:04 mark ("we are seeing kratom in polysubstance use deaths"); 01:17-11-01:17:22 mark ("But this is a totally different way that it could be harming these individuals, taking that kratom, having their liver unable to break down the other drugs in their system and then resulting in their death"). *See also* Senate Hearing, Testimony of Utah Medical Examiner; 01:20:34-01:21-24 mark (discussing "kratom'related deaths"); Testimony of general public witness at 02:22:41-7-02:04:9 and 02:13:52-02:14:20 marks (discussing belief concerning cause of death of their child). The audio of the Senate Hearig is available at the following, https://www.utleg.gov/event-streaming/committee/timeline/289279, beginning at the 1:01:10 mark.

[31] *Defendants' Opposition to Motion for Preliminary Injunction* (ECF 24) at 1.

[32] *See* Declaration of Yin Zou, dated May 19, 2026, attached hereto as Exhibit F. *See also*

[33] *See* Utah Code §§ 58-37-3.4, and 58-37-4(2)(vii)(B) (effect. May 6, 2026).

[34] *See, e.g., Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 506 (1985); *Leavitt v. Jane L.,* 518 U.S. 137, 139 (1996) ("Severability is of course a matter of state law"). *Citizens for Responsible Government State Political Action Committee v. Davidson,* 236 F.3d 1174, 1195 (10th Cir.

presumption that the legislature would have been satisfied with the portions of the statute that remain after the offending provisions are stricken as being unconstitutional."[35]  That satisfaction is certainly not evident from anything in the KRA or the legislative record.  Rather the Utah legislature accepted the KRA as an alternative to an outright kratom ban only because each and every stricture within in it severely limited kratom sales in Utah.

In the Tenth Circuit where a statutory severability clause exists, courts presume that the legislature would have been satisfied with the surviving provisions.[36] There KRA contains no severability clause.[37]

In Utah, the presumption in favor of severability is overcome when the legislature clearly would not have enacted the statute without its unconstitutional component.[38] Defendant Forsyth urged the legislature to adopt a complete ban.[39]  Ban advocates in the legislature were only reduced in number sufficient to substitute the KRA for the ban bill because they had been persuaded by the KRA's inclusion of a combination of severe restrictions.[40]  To declare any one

---

2000) ("to determine whether partial invalidation of a state statute is appropriate, federal courts look to state law,") (citing *Brockett, -07*).

[35] *People v. Seven Thirty-Five East Colfax, Inc.*, 697 P.2d 348, 371 (Colo. 1985).

[36] *See, e.g., Davidson*, 236 F.3d at 1195.

[37] *See* KRA, Exhibit A hereto.

[38] *Riggins v District Court of Salt Lake County*, 89 Utah 183, 51 P.2d 645, 652 (Utah) ("the general rule is that the unobjectionable part of a statute cannot be held separable unless it appears that, 'standing alone, legal effect can be given to it and that the Legislature intended the provision to stand, in case others included in the act and held bad should fall.'") (quoting *Dorchy v. Kansas*, 264 U.S. 286, 290 (1924)).

[39] *See, e.g.,* Senate Hearing, Testimony of Brandon Forsyth ("we support the ban on kratom"). *See also* House Business and Labor Hearing, 2/24/26 ("House Hearing"), Testimony of Brandon Forsyth at 2:03:12-2:03:27 ("It's not an ideal solution. I would still like to see a complete ban"). The audio of the House Hearing is available at https://www.utleg.gov/event-streaming/committee/timeline/300113, beginning at the 1:38:05 mark.

[40] *See, e.g.* House Hearing, Statement of Sen. McKell at the 01:38:32-01:39:05 mark ("This bill that I'm running actually started as a complete ban. And while I think that's probably the best policy, I understand that we work in two bodies at the legislature"). *See also* House Floor

of thos restrictions capable of being severed without affecting overall support for the bill is to act beyond the intentions of the legislators who, very plainly, preferred an outright ban to a bill minus the combination of all restrictions.  The federal court's role is to apply state law as it is written, without "rewrit[ing] state law to conform it to constitutional requirements."[41] Here the legislature created an all or nothing statute void of a severability clause, unwilling to accept any middle ground between a complete ban and the severe restrictions contained in the KRA.[42]

Moreover, because MTP is endogenous in kratom, the MTP scheduling provision is not severable based on effect but is "inextricably intertwined" with the regulation of all kratom.[43]  As the Supreme Court explains, the dispositive inquiry is whether the legislature "would have preferred what is left of its statute to no statute at all."[44] Here, it is highly doubtful the legislature would have authorized kratom sales at all without each restrictive KRA provision in place.  Consequently, severability is inappropriate.  The KRA must be enjoined in its entirety.

## II.    PLAINTIFFS SUFFER IRREPARABLE INJURY IF THE INJUNCTION IS DENIED

If the injunction requested by Plaintiffs is denied, Plaintiffs will be prevented from introducing, distributing, and selling *feel free*® Natural Leaf Kratom (a pure kratom dietary supplement) in Utah. The estimated out-of-pocket loss to BT of the bar on sales is approximately

---

Debate, March 4, 2026, ( Statement of Rep. Thurston at 1:26:48-01:27:30 mark ("Part of this has been a discussion about give and take … Originally there was not supposed to be any kratom sold in the state of Utah. There's been a lot of give and take going on here"); Statement of Rep. Dailey-Provost at 01:34-50-01:35;22 mark ("We have made concessions . . . This is a compromise bill").

[41] *Ayotte v. Planned Parenthood of Northern New England*, 546 U.S. 320, 321 (2006).
[42] *See* footnote 40, *supra*.
[43] *See, e.g., Swepi, LP v. Mora County, N.M.*, 81 F.Supp.3d 1075, 1203 (D.N.M. 2015) ("If the valid portions are inextricably intertwined with the invalid portions so that they cannot be separated without substantially affecting the ordinance, then the entire ordinance must be invalidated." (internal quotations and citation omitted).
[44] *Ayotte*, 546 U.S. at 321.

$370,000.  In addition to that actual financial loss, the Plaintiffs suffer from a loss of brand recognition and suffer from brand dilution every day since May 6, 2026, that Plaintiffs *feel free*® branded products are not allowed on store shelves.  Moreover, Plaintiffs are suffering from competitive injury as competing products replace Plaintiffs' on those store shelves. All advertising for BT kratom products is now effectively prohibited, constituting a complete loss. Furthermore, Plaintiffs have lost all of their Direct Sales Distributors (DSDs) who are responsible for promoting and selling Plaintiffs' *feel free*® branded products to retailers and, thus, are indispensable to the viability of Plaintiffs' business in Utah. The KRA made kratom sales by the DSDs no longer lawful in Utah, thereby abrogating the DSD contracts by operation of law and shuttering Plaintiffs' kratom business in Utah. The harm to brand recognition, the brand dilution, the loss of shelf space to competing products, and the loss of the DSD contractual sales force essential to Plaintiffs' business in Utah constitute a complete and continuing loss.[45]

### III. THE INJURIES SUFFERED BY PLAINTIFFS OUTWEIGH THE SPECULATIVE AND THEORETICAL INJURY OF DEFENDANTS

Pursuant to the Kratom Consumer Protection Act, the law to which the KRA is an amendment, Defendants have regulatory authority to deny registration, embargo from the **market**, and prosecute civilly and criminally any who sell a kratom product that is injurious to consumers.[46] An order of injunction holding the KRA void for vagueness and preventing its enforcement by Defendants against Plaintiffs will cause no provable injury to Defendants beyond inchoate and sheerly speculative or theoretical harm, as the Defendants will retain full power to avoid registration of and remove injurious products from the market. Consequently, the actual

---

[45]Korehbandi Dec., at ¶¶ 9-10.
[46] *See, e.g.,* Utah Code § 4-45-108 (eff. May 14, 2019).

injury suffered by the Plaintiffs outweighs the inchoate, speculative, and theoretical "injury" of the Defendants, causing the balance of equities to strongly favor Plaintiffs.

### IV.    GRANT OF THE INJUNCTION WILL NOT BE ADVERSE TO THE PUBLIC INTEREST, BUT WILL SERVE IT

The KCPA provides for the embargo of kratom products injurious to consumers, the deregistration of sellers of such products, and the prosecution of sellers of such products. Consequently, issuance of the requested injunction will not be adverse to the public interest in safety. Moreover, because, as explained above, the KRA is unconstitutional under the Fourteenth Amendment Void for Vagueness Doctrine, the public interest against arbitrary law enforcement of unduly vague laws will be served by the requested injunction.

### V.    NO APPARENT NEED FOR A BOND

It is within the sound discretion of the Court to set a bond for a preliminary injunction, tailored to the circumstances of each case. In this instance, issuance of the requested preliminary injunction will not create either economic injury to the Defendants or an absence of law sufficient if enforced to protect the public from adulterated kratom products. Plaintiffs therefore request that no bond be required in association with the issuance of the requested injunction.

DATED this 19th day of May 2026.

PRICE PARKINSON & KERR, PLLC

 /s/  Ronald F. Price
Ronald F. Price

EMORD & ASSOCIATES, P.C.

 /s/ Jonathan W. Emord
Jonathan W. Emord

*Attorneys for Plaintiffs*

17

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of May 2026, the foregoing **SECOND MOTION FOR PRELIMINARY INJUNCTION** was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

_/s/ Ronald Price_____